[Civ. No. 31163. Second Dist., Div. Two. Feb. 1, 1967.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOE WITZERMAN et al., Real Parties in Interest.

Thomas C. Lynch, Attorney General, and H. Warren Siegel, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Ball, Hunt & Hart and Frank C. Aldrich for Real Parties in Interest.

McCOY, J. pro tem.*—In July 1966 the People of the State of California filed an action in the respondent court against Joe Witzerman and others, under section 26101, Corporations Code, seeking to enjoin them from selling certain livestock care and management agreements and from making false and misleading statements in connection with such sales, unless and until they obtained a securities permit under section 25500 of the Corporations Code. The action also seeks recovery of civil penalties under sections 17500 and 17536, Business and Professions Code. The question before us is whether a protective order made by the trial court in certain discovery proceedings initiated by the People is in excess of that court's jurisdiction and an abuse of its discretion.

Before the filing of the action the Commissioner of Corpo-

---

*Assigned by the Chairman of the Judicial Council.

rations issued certain cease and refrain orders ordering the real parties in interest not to sell or offer for sale, negotiate for the sale of, or deal in this state with respect to any security as defined in section 25008 of the Corporations Code, and more particularly "any certificate of interest in cattle or livestock" and "any livestock management contracts" without a permit to sell such securities, and, as to some of the real parties in interest, without a certificate to act in this state as security brokers or agents. Shortly after the filing of the complaint against the real parties in interest, here referred to as the defendants, the People obtained a preliminary injunction ordering defendants to desist from offering or negotiating for the sale of, selling or receiving any consideration for the transfer of, hypothecating, or dealing in this state in any livestock care and management agreements similar to those set forth in the complaint, until they had secured the necessary permits and licenses to do so. Defendants were also enjoined from making any statement or distributing any literature which states or implies, among other things, that the livestock management agreement "or defendants' method of doing business, has been approved by, or exempted from the Corporate Securities Law by the Commissioner of Corporations."

In August 1966 the People served several interrogatories on defendants. In answer to interrogatory 3 some of the defendants submitted a list of the livestock owners who have entered into livestock care and management agreements with Saddle Butte Ranch of Long Beach, the date of such agreements, the description of the livestock covered thereby, the persons negotiating them, the amounts paid by the owners under the agreements, and their account numbers. However, they did not give the People the addresses of these persons. In answer to interrogatory 11 defendants stated that "It is impossible to recall any specific conversation relating to any specific person, although some if not all of these defendants did at one time or another exhibit the material and follow the procedures set forth in their answers to Interrogatory No. 10. It is also impossible to recall any specific date, information or material forming the factual basis for any specific conversations, although extensive farm journals, magazines, university reports and other published material was [f]requently referred to and used." Interrogatory 10 and the answer thereto relate to representations made by defendants to persons to whom they had sold cattle or livestock management contracts.

On receipt of defendants' answers to the interrogatories the People noticed a motion under section 2030, subdivision (a), Code of Civil Procedure, for an order requiring the answering defendants to provide a further answer to interrogatory 3 giving the addresses of all the persons to whom livestock management agreements had been sold. Although defendants did not oppose the granting of this motion they noticed a motion for a protective order under section 2019, subdivision (b), as authorized by section 2030, subdivision (b), "to prohibit, limit or restrict additional answers to Interrogatory No. 3." The People opposed this motion. On October 19 the court granted both motions and made the order here under review. The court thereby ordered the defendants to provide the addresses of the livestock owners set forth in their answer to interrogatory 3. In response to defendants' motion it ordered that the supplemental answers setting forth said addresses should be sealed, subject to further order of the court, and further that during the pendency of the action, or until otherwise ordered, the People, their agents, etc., "shall be and are hereby enjoined and prohibited from, either directly or indirectly, making or causing to be made to the owners whose names are disclosed by said answers any statement or representation, which implies: 1. That a cease and desist order has been issued against said defendants to refrain them from violating corporate securities laws; 2. That said defendants are operating without a license; 3. That said defendants have not obtained a securities permit; 4. That said defendants have been ordered to stop doing business; 5. That said defendants may not or could not perform and carry out the cattle management contracts with their customers.''

The People now seek a writ of mandate requiring the trial court to set aside the injunctive provisions of the order. It contends primarily that the order is in excess of the trial court's jurisdiction under section 526, subdivision 4, Code of Civil Procedure, and section 3423, subdivision Fourth, Civil Code, and an abuse of the court's discretion, in that it enjoins the Commissioner of Corporations from exercising his powers under section 25314 of the Corporations Code for the public benefit, thus preventing him from adequately pursuing his duty under section 25316 of that code to protect security purchasers from fraud and deception in the sale of securities. It also contends that the effect of the order is to prevent the commissioner and the Attorney General in their interviews with defendants' customers from mentioning the cease and

desist orders and the preliminary injunction, all of which are public records open to public inspection, under penalty of contempt of the protective order.

Defendants oppose the granting of the petition on the ground that the order is "clearly within the jurisdiction of the court under Sections 2030(b) and 2019(b)(1) C.C.P.," that it is not contrary to the public interest, and that the order is necessary to protect defendants from harassment, annoyance, expense, embarrassment and oppression. No return to our alternative writ was filed by the respondent court.

The authority of a trial court to make protective orders is limited by section 2019, subdivision (b), Code of Civil Procedure. By section 2030, subdivision (b), that section is made "applicable for the protection of the party from whom answers to interrogatories are sought . . ." No such order can be made in any case unless there is a showing of good cause. Under these sections, so far as applicable here, the trial court, "for good cause shown" may make an order that the answers to interrogatories may be sealed, subject to further order of the court, and "may make any other order which justice requires to protect the party . . . from annoyance, embarrassment or oppression." (Code Civ. Proc., § 2019, subd. (b)(1).) In our opinion the making of the order here under review constituted an abuse of the discretion conferred on the court by these sections, in that petitioners failed to make a showing of good cause for the order, and further that the order exceeded the jurisdiction of the court.

There is no doubt that petitioner is entitled by proper interrogatories to discover "the identity and location" of persons with whom defendants had entered into contracts of the type or similar to those involved in the action, as "persons having knowledge of relevant facts" (Code Civ. Proc., § 2016, subd. (b)), in order to select those to be interviewed and deposed. (*West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407, 416 [15 Cal.Rptr. 119, 364 P.2d 295].) No good cause was shown for the court's order that the answers to be filed disclosing the addresses of these persons should be sealed until further order of the court.

In an attempt to show good cause for the injunctive portion of the protective order, defendants filed a declaration alleging that three of them "have received a number of telephone calls from their customers (and contract holders)," who have advised them that representatives of the Commissioner of Corporations "have contacted them and told them, among

other things, the following: 1. That a cease and desist order has been issued against these defendants to refrain from violating corporate securities laws. 2. That these defendants are operating without a license. 3. That these defendants have not obtained a securities permit. 4. That these defendants have been ordered to stop doing business. 5. That they have been asked to sign statements concerning representations made to them by these defendants. 6. Other statements that infer or suggest to said customers that these defendants may not or could not perform and carry out the cattle management contracts with their customers.''

■ In *Flora Crane Service, Inc.* v. *Superior Court*, 234 Cal.App.2d 767, 792 [45 Cal.Rptr. 79], the court said that whatever the philosophy of good cause may be as distilled from the earlier cases, ''we think that by mandate of section 2036 [Code Civ. Proc.] it must now be articulated in any given case by an affirmative showing of specific facts justifying discovery.'' As we read section 2036, the same rule must be applied when a party is seeking a protective order in relation to discovery proceedings initiated by his opponent. In either situation, it is for the courts to determine what specific facts should be required to show good cause. ''The court's determination necessarily depends on the facts and issues of the particular case.'' (*Associated Brewers Distributing Co.* v. *Superior Court,* 65 Cal.2d 583 [55 Cal.Rptr. 772, 422 P.2d 332].)

■ In our opinion the facts stated in defendants' declaration do not constitute a sufficient showing of good cuase in the circumstances of this case as required by section 2019, subdivision (b). At most, defendants are complaining that the representatives of the Commissioner of Corporations, in their investigations of defendants' activities in preparation for the trial of the action, are advising defendants' customers of facts which are matters of public record, and are making ''other statements'' the nature of which is not disclosed.

■ The statement in the declaration that the conduct of the commissioner's representatives ''constitutes annoyance, embarrassment, harrassment [*sic*] and a substantial interference with the vested contract relationship between these defendants and their customers'' is nothing more than the conclusion of the declarant having no evidentiary value. (*Tri-State Mfg. Co.* v. *Superior Court,* 224 Cal.App.2d 442, 445 [36 Cal.Rptr. 750].) In view of the facts of this case and the issues involved it can hardly be said that the proper investi-

282

gation of defendants' conduct which is the subject of the complaint before the court constitutes "annoyance, embarrassment or oppression" within the meaning of section 2019, subdivision (b).

■ Apart from the absence of any showing of good cause, the protective order appears on its face to be in excess of the jurisdiction of the court. Section 526, Code of Civil Procedure, provides in part that "An injunction can not be granted: . . . 4. To prevent the execution of a public statute by officers of the law for the public benefit; . . ." The same language is found in section 3423 of the Civil Code. The order here under review is directed both to the Commissioner of Corporations and to the Attorney General, both of whom are public officers. Where, as here, the validity of the laws under which they are acting is beyond question and their powers are plain, the jurisdiction of a court to issue an injunction is limited by these sections. (*State Board of Equalization* v. *Superior Court*, 5 Cal.App.2d 374, 378 [42 P.2d 1076]; *Financial Indem. Co.* v. *Superior Court*, 45 Cal.2d 395 [289 P.2d 233].) As the court said in *Financial Indemnity Co.*, at page 402, quoting from *Southern Oregon Co.* v. *Quine*, 70 Ore. 63 [139 P. 332] : " 'We think the law is fixed, beyond cavil, that courts of equity have no power by injunction to restrain a public officer from performing an official act that he is required by valid law to perform. It is not sufficient to clothe the court with jurisdiction to say simply that, unless the court extends its restraining hand, hardships will follow, or irreparable damage will ensue, because the officer delegated to execute such law may act unwisely or injuriously to the party seeking relief. The acts must be such as are without the sanction of a sound law.' "

There can be no doubt that in initiating the action now pending in the respondent court and assisting the Attorney General in gathering evidence, the Commissioner of Corporations is performing an official act that he is required by valid law to perform.

Section 26101 of the Corporations Code authorizes the Commissioner of Corporations to bring an action for injunctive relief whenever "the commissioner believes from evidence satisfactory to him that any person, partnership, corporation or company has violated or is about to violate any provision" of the corporate securities law. Such an action is "clearly one in execution of a valid public statute." (Cf. *Daugherty* v. *Superior Court*, 23 Cal.App.2d 739 [74 P.2d 549].) The

public dissemination by the commissioner of "any information concerning any company or any contracts . . . or other securities sold or offered for sale within this State, if in his judgment giving, issuing, or publishing it will be of public interest or advantage or will tend to prevent the fraudulent sale of such securities," as authorized by section 25314 of the Corporations Code, is equally in execution of a valid public statute, and is not limited in point of time to the period before the filing of an action under section 26101. (See Corp. Code, § 25316.)

In representing the commissioner and the People in the prosecution of the action the Attorney General is also a public officer performing official acts that he is required by valid law to perform. Section 25307 of the Corporations Code requires the Attorney General to "act as the attorney for the commissioner in all actions and proceedings brought by . . . him under or pursuant to any provisions of any law under his jurisdiction." Section 17536 of the Business and Professions Code provides for the assessment and recovery of penalties for false advertising "in a civil action brought in the name of the people of the State of California by the Attorney General . . ." In all causes in which he is required to appear his docket, which is open to public inspection, must show among other things "the nature of the demand" in civil causes. (Gov. Code, § 12514.) As in the case of the attorney for any other litigant, the Attorney General has complete charge and supervision of the procedure to be adopted in preparing and bringing the action to trial. (*Zurich General Acc. & Liab. Ins. Co., Ltd.* v. *Kinsler,* 12 Cal.2d 98, 105-107 [81 P.2d 913].)

In all such cases the Attorney General would be remiss in his duty if he failed to interview potential witnesses having knowledge of relevant facts. To enjoin him from discussing with such persons the facts of the case as they appear in the public record and the statements admittedly made to them by defendants would constitute an unwarranted limitation on discharge of that duty. We agree with the Attorney General that the protective order "creates an atmosphere of secrecy about the proceedings in this case to such a degree that security holders which petitioner interviews will be reluctant to provide the information necessary to prosecute this case for their protection and the protection of other members of the public. We think it is fair to say that a person will not give information unless he is told why he is being asked to do so and for what purpose the information will be used. These questions

could not be answered by petitioner without a mention of the cease and desist orders and the basis for the pending litigation, which is the sale of securities without a permit and the use of false advertising in connection therewith.'' The information sought from these persons is clearly relevant to the subject matter of the action. In the circumstances of this case the court had no jurisdiction and it was an abuse of its discretion to tie the hands of the Attorney General as it did.

The trial court also enjoined the commissioner and the Attorney General from making any statements to defendants' contract holders relating to the ability or inability of defendants to carry out their contracts. In the absence of any factual showing as to what statements had been made or were about to be made there was no basis for this portion of the order.

Let a peremptory writ issue as prayed.

Roth, P. J., and Herndon, J., concurred.