[Civ. No. 40952. First Dist., Div. One. Mar. 31, 1978.]

COUNTY OF ALAMEDA, Plaintiff and Respondent, v.
JEROME A. LACKNER, as Director, etc., Defendant and Respondent;
JAMES MATTSON, Real Party in Interest and Appellant.

## COUNSEL

Edwin J. Wilson, Jr., for Real Party in Interest and Appellant.

Richard J. Moore, County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Asher Rubin and Sheridan H. Brown, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

ELKINGTON, J.—Welfare and Institutions Code (hereafter W&I Code) section 12300 et seq. provide that recipients of public welfare who can remain in their own homes, and whose ability to take care of themselves is "severely impaired," are eligible for certain homemaking services. They are entitled only to such services as are found reasonably necessary by the county welfare agency's "determination of need." They then receive a "monthly cash payment in advance" in accordance with need, but in any event not more than $450, or $505. That sum is in addition to any other welfare benefits due the recipient. The amount so paid appears to be principally a county charge, with some funding by the federal government and perhaps some by the state.

If such recipients are dissatisfied with any action of the county welfare department in reference to the homemaking services, they are given "an opportunity for a fair hearing." Such a hearing is accorded by the state's Department of Health (W&I Code, § 10950), whose decision thereon will supersede that of the county welfare agency. And then, if either the county welfare agency, or the recipient, is aggrieved by that ruling judicial review by "administrative mandamus," under Code of Civil Procedure section 1094.5, is made available by W&I Code section 10962.

We turn now to the tangled factual and procedural context of the case at hand.

James Mattson, described in the caption as real party in interest, was such a recipient of public welfare who was "severely impaired" by a mental disorder. He had been receiving approximately the maximum allowable for homemaking services. A representative of the county

welfare agency of Alameda County (hereafter County) made an unannounced visit to his home and from an inspection concluded that the services for which Mattson was being paid were not being furnished or needed. Mattson's explanation of the incident follows: "At that time, the claimant's attendant was considering retirement from his case on the basis that the county's payment was so often delayed and diminished that the attendant could not afford to continue on this job. Therefore, when on December 9, the county made a home call, it was found that the claimant's apartment was in great disorder. Subsequent to that date, the attendant, feeling a responsibility to the claimant, returned and has worked consistently since." On a reduced determination of need the County ordered that the amount payable to Mattson be reduced to $105.85 per month. The order was made in December 1975; the precise date does not appear in the record.

Dissatisfied with the action of the County, Mattson on April 10, 1976 (at least 114 days after the County's order), requested of respondent Director of the Department of Health (hereafter for convenience, Department) that he be accorded a fair hearing pursuant to W&I Code section 10950.

Following such a hearing the Department, July 10, 1976, made an order which, although not clear, is interpreted by the parties and will be by us as restoring Mattson to the status held by him prior to the County's reduced determination of need. The County then, by administrative mandamus proceedings under Code of Civil Procedure section 1094.5, filed August 9, 1976, sought to set aside the Department's order. But since W&I Code section 10962 commands that the Department "shall be the sole respondent in such proceedings," Mattson himself was not served with the summons and petition, or otherwise, in the judicial proceedings. However, the Department was so served, August 11, 1976, and W&I Code section 10962 provides: "Immediately upon being served the director [Department] shall serve a copy of the petition on the other party entitled to judicial review [here Mattson] and such party shall have the right to intervene in the proceedings." Through some inadvertence, however, Mattson was not served with a copy of the petition by the Department. The Department explains: "Although ordinarily the Department routinely mails notice of pending proceedings to affected claimants, in the instant case, the Department did not 'immediately' serve the documents on [Mattson] upon receipt of the County's petition for writ of mandate." (The record indicates that the documents were not served on Mattson "immediately," *or at all.*)

Chronologically, the case's next incident of importance is disclosed by a declaration of the County's attorney that on August 13, 1976, "Mattson called me to inquire about the proceedings for judicial review Alameda County had filed August 9, 1976." He told Mattson "that the hearing would be held on August 27, 1976," and "that he should obtain an attorney to represent him." And a declaration of Mattson's attorney recited the following:

"On or about August 23, 1976, James Mattson came to my office and indicated that he had been told by his welfare worker that there was some form of litigation which might be going on which may affect him. [¶] That on or about August 24, 1976 I contacted Eric Chamblis [sic], who was the attorney for the county counsel's office and who indicated that the county had filed a 1094.5 action for administrative mandamus in the case of the *County of Alameda vs. Lackner.* He advised me that the Department of Benefits Payments was being represented by Mr. John Klee in the attorney general's office in San Francisco. [¶] I called Mr. Klee's office on August 24, 1976 and was advised that the case had been assigned to Sheridan Brown, and that she would be handling the case. [¶] I thereafter contacted Sheridan Brown and was advised that there was in fact an action pending and that she would mail me a copy of the petition and her response immediately. [¶] I was further advised that a hearing would take place on August 28, 1976 at 2:00 p.m., in Department 1 of the Alameda County Superior Court. [¶] By August 26, 1976 I had not received a copy of any moving papers with respect to this matter. On the afternoon of August 26, 1976 I sent a delivery service to San Francisco to secure copies of the petition and Ms. Brown's response. I received these papers on August 26, 1976 at 6:00 p.m. [¶] In my conversation with Sheridan Brown she indicated that in fact James Mattson had never been served with any documents relating to these proceedings. [¶] Upon review of the documents which I received from the delivery service, I noted that the requested documents had been mailed to 8000 Center St., instead of my correct address, 2000 Center Street. . . . [¶] On August 26, 1976 I advised James Mattson that given the fact that I had not received any documents with respect to these matters until 6:00 p.m. on the day before the hearing I was not in a position to adequately represent him, as I did not have appropriate time to secure copies of the relevant regulations or to prepare any kind of meaningful response on such short notice."

Mattson did not appear, in person or by counsel, at the superior court hearing. On September 15, 1976, the court entered judgment, in favor of

the County, ordering issuance of the requested peremptory writ of mandate. Thereafter, December 17, 1976, Mattson moved the superior court for leave to intervene in the administrative mandamus proceeding, and to vacate the judgment of September 15, 1976.

Both of the motions were denied by the court January 4, 1977.

Mattson's notice of appeal, filed January 7, 1977, recites that he appeals "from the orders herein denying his motion to intervene and to vacate judgment and from the judgment filed herein on September 15, 1976."

For the reasons which we now state, we have concluded that these motions should have been granted, and that the judgment should be reversed.

I. ■ As pointed out, the County's order reducing payments for Mattson's homemaking services was made in December 1975. His request for a fair hearing thereon was made April 10, 1976, more than 90 days later. A regulation (§ 22-009 of the Manual of Policies and Procedures) of the Department required that such a request be made within 90 days of the County's order.

It is urged that the Department was accordingly without power to hold the fair hearing or to make the here questioned order.

W&I Code section 10951 states: "No person shall be entitled to a hearing pursuant to this chapter unless he files his request for the same *within one year* after the order or action complained of." (Italics added.) It was finally adjudged, July 13, 1976, in a class action entitled Washington v. Obledo, of the Los Angeles County Superior Court and numbered CA 7000259, that the statute's one-year period was controlling over that of the Department's regulation. Mattson was a member of the class on behalf of which the action was brought.

The Department agrees, and concedes that Mattson's request for a fair hearing was timely. We have, independently of the concession, reached the same conclusion. "It is well established that administrative regulations must conform to applicable legislative provisions, and that an administrative agency has no discretion to exceed the authority conferred upon it by statute." (*California Welfare Rights Organization* v. *Brian,* 11

Cal.3d 237, 242 [113 Cal.Rptr. 154, 520 P.2d 970] [cert.den., 419 U.S. 1022 (42 L.Ed.2d 296, 95 S.Ct. 497)].)

II. As has been indicated, the superior court's judgment ordering the County's requested peremptory writ of mandate was entered September 15, 1976. Mattson's motions to intervene, and to vacate the judgment, were made on December 17, 1976. His notice of appeal from denial of the motions and from the judgment was filed January 7, 1977. It is contended by the County that the appeal from the September 15, 1976, judgment was not timely.

It will be seen that the notice of appeal was filed at least 114 days after entry of the judgment, and several days after denial of the motions to intervene and to vacate the judgment. Rule 2, California Rules of Court, provides that notice of appeal shall be filed within 60 days after notice of entry of judgment to the aggrieved party, or if such notice is not given, "within 180 days after the date of entry of the judgment, whichever is earliest, . . ."

 In a factual and procedural context closely analogous to that of the case before us, the state's high court in *County of Alameda* v. *Carleson,* 5 Cal.3d 730 [97 Cal.Rptr. 385, 488 P.2d 953], found welfare recipients in the position of Mattson to be *aggrieved* by a writ of mandate entered pursuant to W&I Code section 10962 and Code of Civil Procedure section 1094.5. The court then said: " 'Any aggrieved party' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) It is generally held, however, that only parties of record may appeal; consequently one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case. . . . Instead, he may appeal from the order denying intervention. . . . Nevertheless, one who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663." (5 Cal.3d, p. 736, fn. omitted; and see authority there collected.)

Under the rationale of *County of Alameda* v. *Carleson, supra,* Mattson for the purpose of appeal became a party to the mandate proceedings December 17, 1976. He was never served, as such a party, with notice of entry of the judgment ordering the writ of mandate to issue, and his notice of appeal was well within the 180 days allowed him by rule 2.

III. ■ The next issue of Mattson's appeal relates to his motions for leave to intervene in the County's mandate proceedings, and to vacate the judgment which had earlier been entered. The motions, as indicated, were made about three months after entry of the judgment. The instant question is whether, as a matter of law, the superior court had *discretion* to grant Mattson, a nonparty to the mandate proceedings, the requested relief.

This problem also is resolved by *County of Alameda* v. *Carleson, supra.* There the County brought an action against the Department. A judgment was entered for the County which had the effect of terminating grants to certain welfare recipients. After entry of the judgment motions were made on behalf of the nonparty recipients, *as here,* to vacate the judgment and to intervene in the action. A denial, or "striking," of the motions was followed by an appeal. The high court held, in effect, that the superior court had the power, *in its discretion,* to grant each of the motions, and that an appeal lay from each of the orders denying them.

As pointed out, Mattson was a person severely impaired by a mental disorder who was not reasonably to be held as fully accountable for his action, or inaction, as would an unimpaired person. Although his interests were closely involved by the County's mandate proceeding, he was not served with a copy of the petition by the Department as the law provided he should have been. ■ The fact that he had somehow learned "that there was some form of litigation which might be going on which may affect him" may not reasonably be deemed a substitute for a copy of the petition which could be turned over to a friend, or attorney, with a request for aid. We said in *Ursino* v. *Superior Court,* 39 Cal.App.3d 611, 617 [114 Cal.Rptr. 404], that a requirement that a statutory notice be given "is not satisfied by actual knowledge without notification conforming to the statutory requirements." ■ Another inadvertence for which Mattson was in no way accountable was the Attorney General's misdirection of the "requested documents" which were finally received by Mattson's attorney "6:00 p.m. on the day before the hearing," causing his unwillingness to accept an unprepared responsibility for the case.

For these reasons and under all the facts and circumstances of the case, we opine that the failure to grant Mattson's motions to intervene, and to vacate the judgment, was an abuse of judicial discretion.

IV. We think it not in the interest of justice, as suggested by Mattson in his closing brief on appeal for the first time, to pass upon the basic merits of the case and affirm "the decision of the Department . . . ."

And it has become unnecessary to our resolution of the appeal to consider other points and arguments raised by the several parties.

V. ■ The superior court will fix and award reasonable attorney fees for the services of Mattson's attorney in the superior court, and on this appeal. (See W&I Code, § 10962; *Le Blanc* v. *Swoap,* 16 Cal.3d 741 [129 Cal.Rptr. 304, 548 P.2d 704].)

The judgment entered September 15, 1976, and the orders entered January 4, 1977, denying the motions to intervene and to vacate the judgment are, and each is, reversed. The superior court will take further proceedings not inconsistent with the views we have expressed.

Racanelli, P. J., and Draper, J.,* concurred.

A petition for a rehearing was denied April 26, 1978, and the petition of the plaintiff and respondent for a hearing by the Supreme Court was denied May 25, 1978.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.