[Civ. No. 44736. First Dist., Div. One. June 1, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
HY-LOND ENTERPRISES, INC., Defendant and Respondent;
EVELLE J. YOUNGER, as Attorney General, etc., et al.,
Interveners and Appellants.

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, Charlton G. Holland, John J. Klee, Jr., and Catherine Van Aken, Deputy Attorneys General, for Interveners and Appellants.

No appearance for Plaintiff and Respondent.

Weissburg & Aronson, Peter Aronson and Kathleen H. Drummy for Defendant and Respondent.

## Opinion

SIMS, J.*—The Attorney General and the Department of Health, known since July 1, 1978, as the Department of Health Services (Health & Saf. Code, § 20, as amended Stats. 1977, ch. 1252, § 109), hereinafter referred to as the Department, have appealed from an order of the trial court that denied their motion to set aside and vacate a "Stipulation and Order for Judgment." The stipulation and order was entered as a judgment in an action in which the District Attorney of Napa County, by his first amended complaint, sought an injunction, civil penalties and other relief against respondent, the operator of skilled nursing facilities. One count was predicated upon unfair competition under the provisions formerly found in sections 3369 and 3370.1 of the Civil Code (now found in Bus. & Prof. Code, §§ 17200-17208), and a second count was based on false and misleading statements under the provisions of sections 17500 and 17535 of the Business and Professions Code.

The Attorney General and the Department contend that the stipulation and judgment is erroneous and void insofar as it severally precludes both the Attorney General and the Department from performing statutory duties. Implied in the foregoing is the premise that the district attorney, who has not appeared in defense of the order, or judgment, exceeded his authority. Respondent, the operator of the skilled nursing facilities, asserts on several grounds that neither the Attorney General or the Department has standing to attack the judgment, and that in any event the state and the appellants, as an agent and an agency of the state, are barred by the stipulation and judgment because it was entered into under authority conferred on the district attorney by statute.

From an examination of the record we conclude that both the Attorney General and Department had standing to attack the judgment and that the court erred on the merits in denying their motion. The order must be reversed and the case will be remanded for modification, or, if requested by respondent, vacation of the judgment.

On May 14, 1976, the Department completed a 24-page report setting forth deficiencies and plans of correction for the Hy-Lond Convalescent Hospital in the City of Napa. The report sets forth 87 noncompliances with state and federal law. A copy of the report attached to the first amended complaint indicates that, after passing through the Depart-

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

ment's district office in Santa Rosa, it was referred to the Consumer Affairs Division of the District Attorney of Napa County. According to the first amended complaint, an original complaint was filed June 16, 1976.

The first amended complaint alleges that respondent operates 18 skilled nursing facilities in California and two in Washington. In the first cause of action, for unfair competition, the district attorney alleges that commencing at least as far back as January 1, 1974, respondent, as part of a continuing repeated pattern of conduct, violated Department regulations; that each such violation was a misdemeanor under Health and Safety Code section 1290, and an unlawful business practice under former Civil Code sections 3369 and 3370.1. The complaint groups numerous violations under the headings "Commingling of Patient Funds"; "Nursing Care"; "Dietetic Service"; "Pharmaceutical Care"; "Administration"; "Physical Plant"; and "Other Violations." The commingling allegedly occurred in Hy-Lond's main office in Sonoma, Sonoma County, where all patient trust fund money was controlled. With respect to "Nursing," it was alleged, "commencing at least January 1, 1974, on numerous occasions and in numerous Hy-Lond controlled facilities including, but not limited to the Napa, California, facility, defendant Hy-Lond Enterprises, Inc: [followed by particulars]." Similar allegations accompanied the other charges, although some, "Administration," "Physical Plant," and "Other Violations," merely referred to violations in numerous Hy-Lond controlled facilities.

The second cause of action, for false, misleading and deceptive advertising, incorporated the allegations referred to above, and alleged that conditions at the hospitals were misrepresented. It was specifically alleged that an advertisement in the Napa Valley Telephone Directory was false, misleading or deceptive.

Paragraph 25 states that the numerous facilities mentioned include, but are not limited to, a named 6 of the 18 facilities in California, including the facility in Napa. That facility is the subject of the copy of the report and copy of the advertisement attached to the amended complaint.

The defendant Hy-Lond Enterprises, Inc. filed an answer with a general denial on January 28, 1977, and four affirmative defenses which are not relevant here. The next step revealed by the record is the stipulation and order for judgment approved as to form and content by

the Napa County District Attorney and the attorneys for the defendant Hy-Lond Enterprises and by the defendant itself, through its president.

The judgment covers all 18 facilities of Hy-Lond located in 12 counties, including Napa County. It enjoins and restrains respondent "from carrying on or engaging in any acts of unfair competition, which term is defined for purposes of this judgment as failing to be in substantial compliance with Health and Safety Code §§ 1275-1300 and with those provisions of Title 22, Div. 5, Ch. 3 of the California Administrative Code constituting regulations concerning patient care by skilled nursing facilities"; and "from making or disseminating to the public, or causing to be made or disseminated to the public, any untrue or misleading representations relating to the services provided by defendant concerning any circumstances or matter of fact connected with the rendition of said services, which representation defendant knows, or with the exercise of reasonable care should know, to be untrue, or misleading." The stipulated judgment then provides: "3. The injunctive relief provided in paragraphs 1 and 2 hereinabove shall be subject to the following conditions: . . ." The conditions are set forth in the margin.[1]

Defendant agrees to permit state representatives to interview its employees, and to inspect its records. It also agrees to post notices giving patients notice of their right to make complaints, and of the manner in which they may be made. It also undertook to notify its employees of the executory provisions of the injunction. There then follows the paragraph set forth in the margin.[2]

---

[1]"a. The District Attorney of Napa County is hereby designated as the exclusive governmental agency that may enforce the provisions of this injunction. However, the Napa County District Attorney may appoint any other District Attorney, City Attorney, or the Attorney General of California as a duly designated agent to enforce the provisions of this injunction;

"b. No contempt citation for violation of any of the terms of this injunction will be sought by plaintiff without first giving notice to defendant of any condition which plaintiff reasonably believes to violate this injunction together with 30 days opportunity to correct such condition. If the same is not corrected within the time specified to the reasonable satisfaction of plaintiff, it may then exercise its rights to seek a contempt citation hereunder. At any contempt hearing defendant shall be allowed the opportunity to present evidence showing that defendant administrators or other managing personnel acted reasonably under the circumstances in their effort to train and supervise their subordinate employees to avoid violations of this injunction."

[2]"8. No actions pursuant to the provisions of Civil Code § 3369 et seq. shall be brought by the People of the State of California for alleged violations of any acts covered by the provisions of this injunction so long as such injunction remains in effect. However, nothing in this injunction shall prohibit the filing of criminal proceedings against defendants by any District Attorney, City Attorney or the Attorney General of California

A further provision reads: "10. In the case of a sale of any of defendant's wholly owned facilities listed above to any entity in which defendant has a 51% or greater ownership interest, defendant will make the terms of this injunction binding upon such successor in interest as a condition of the sale."[3]

Termination is provided for as set forth in the margin.[4] The final paragraph reads: "12. Plaintiff and defendant acknowledge that plaintiff's claims as set forth in the complaint and amended complaint filed herein are strenuously disputed by defendant. Defendant, however, as a matter of compromise only and without the admission or inference of any liability on its part, desires to discontinue the within litigation by payment of $40,000.00 to the Treasurer of the County of Napa in full and final satisfaction of all of plaintiff's claims with respect to each of defendant's facilities designated herein except as provided in paragraphs 1 and 2 of the Judgment. Said sum shall be paid by defendant in three annual installments commencing with the payment of the sum of $13,334.00 on or before September 1, 1977, the payment of $13,333.00 on or before September 1, 1978, and the final installment of $13,333.00 on or before September 1, 1979."

On October 12, 1977, the Attorney General on behalf of the director of the Department gave notice of intention to move to set aside and vacate the judgment on the grounds that it was entered against the director because of mistake, inadvertence, surprise or excusable neglect. (See Code Civ. Proc., § 473.) There is no affidavit in support of this motion in the record. It was noticed to be heard on November 18, 1977, but apparently was continued for hearing to March 10, 1978. On February 28,

regarding facts existing subsequent to the entry of judgment herein. No proceedings to suspend or revoke the license of defendant or defendant's participation in any government programs arising out of facts as set forth in plaintiff's first amended complaint herein shall be brought or maintained by the State of California, including any State administrative agency in connection with any acts, conduct or omissions occurring at any of defendant's facilities referred to herein."

[3]Cf., Health and Safety Code section 1292, which reads: "Any action brought by the director against a health facility shall not abate by reason of a sale or other transfer of ownership of the health facility which is a party to the action except with express written consent of the director."

[4]"11. If defendant has not been adjudged to be in contempt of the within injunction for a period of four years from and after the date of entry of judgment herein, or any other consecutive four year period following the issuance of any contempt citation, this injunction shall be dissolved. This injunction shall also be dissolved at any time that skilled nursing facilities shall be declared exempt or not subject to the provisions of Civil Code § 3369 by an act of the legislature or by judicial declaration."

1978, the Attorney General and the Department gave notice of intention (entitled "Amended Motion to Amend or Vacate Judgment") to move the court for an order either (1) amending the stipulation and order for judgment to the extent it purports to bind governmental officials and agencies who were not parties to the action, or (2) vacating the judgment in its entirety. That notice of motion was accompanied by points and authorities attacking the provisions of paragraph 3a (fn. 1 above), and severally the first, second and third sentences of paragraph 8 (fn. 2 above).

Following a hearing, the trial court denied the motion and set forth its views in a memorandum of decision which is alluded to below. This appeal ensued.

## I

The question of the Attorney General's standing to intervene in this action by moving to vacate the judgment on behalf of himself (and the district attorneys in other counties where the respondent may have facilities), and on behalf of the Department, is intertwined with the merits of the controversy. If the State of California and all of its agents and agencies are bound by the stipulations extended by the District Attorney of Napa County in consideration of the stipulations extended by respondent, it is obvious that there should be no need for intervention, there is no controversy, and the movants and appellants can be relegated to attempting to litigate the validity of the restraints in the judgment when and if the respondent sets up the judgment as a defense to any action taken by the Attorney General, by any district attorney or by the Department.

It is obvious, however, that we cannot reach the merits unless the appellants are admitted to the courtroom. We therefore first examine those contentions of the respondent that attack the appellants' standing on grounds that are not related to the scope of the authority of the Napa County District Attorney.

## A

In *County of Sacramento* v. *C. P. R. R. Co.* (1882) 61 Cal. 250, the district attorney, as he was authorized to do, brought an action to recover state and county taxes. The taxpayer filed an offer of compromise which was accepted by the district attorney and judgment was rendered

accordingly. The Attorney General, on behalf of the state, moved to set aside the judgment as not authorized by any law, and to strike from the files the acceptance of the offer for judgment. When the court below denied the motion, the Attorney General gave notice of appeal. The taxpayer moved the court to dismiss the appeal upon the ground that the Attorney General had no right to be heard in the court below and no authority to institute an appeal. The Supreme Court denied the motion and reportedly stated, " 'The Attorney General, as the law officer of the State, has a right to be heard in a case involving the revenue of the State.' " (61 Cal. at p. 251.)

In the hearing on the merits it was urged that the Attorney General was neither a party to the action, nor an attorney for a party and that he had no right to appear in the case and no authority to appeal. (*Id.,* p. 252.) In its opinion, the court stated: "This Court has already held that the Attorney General had the right to control the action in the Court below and to appeal from the judgment." (*Id.,* p. 253.) In ruling on the merits of the motion to set aside the judgment, the opinion recites: "When, therefore, it appeared that the District Attorney, without consultation with the Attorney General, had accepted the offer of defendant to allow a judgment to be taken for less than the amount of taxes sued for, the Court below, upon the application of the Attorney General, should have permitted that officer to withdraw the acceptance, and should have set aside the judgment based upon it, together with the satisfaction thereof. The Court should have taken judicial notice of the supervisory control of the Attorney General, and of the limitations upon the power of the District Attorney implied by such supervision. The order denying the application of the Attorney General was an order made after judgment, and is appealable." (*Id.,* p. 254.)

Respondent urges, as suggested by the trial judge's memorandum of decision, that the provisions now found in section 12550 of the Government Code[5] are not as broad as those formerly found in subdivision 5 of section 470 of the Political Code which were relied upon in the earlier case. Respondent also refers to the supervisory powers of the Attorney General as delineated in section 13 of article V of the California Constitution. It points out that Justice White, in his long and circuitous

---

[5]"The Attorney General has direct supervision over the district attorneys of the several counties of the State. . . . When he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, he shall assist any district attorney in the discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction."

path of finding racing information newspaper publisher Brophy not guilty of perjury, paused to declaim that provisions for "supervision," then found in section 21 of article V, did not contemplate control, and "that . . . district attorneys cannot avoid or evade the duties and responsibilities of their . . . offices by permitting a substitution of judgment." (*People v. Brophy* (1942) 49 Cal.App.2d 15, 28 [120 P.2d 946].) Respondent concludes that the Attorney General had no right to exercise supervisory powers after a judgment was entered. (Cf. *County of Sacramento* v. *C. P. R. R. Co., supra,* 61 Cal. at p. 251.)

The respondent has created and destroyed a straw man. The Attorney General sought to intervene and vacate portions of the judgment on the theory that the district attorney had exceeded his authority in stipulating away certain rights and duties reserved to the office of Attorney General and to the Department respectively. He does not rely on his supervisory powers.

## B

■ " 'Any aggrieved party' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) It is generally held, however, that only parties of record may appeal; consequently one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case. [Citations.] Instead, he may appeal from the order denying intervention. [Citation.] Nevertheless, one who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663. [Citations.] ■ One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' (See *Leoke* v. *County of San Bernardino, supra* [249 Cal.App.2d 767 (57 Cal.Rptr. 770)], at p. 771.)" (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736-737 [97 Cal.Rptr. 385, 488 P.2d 953] [app. dism., 406 U.S. 913 (32 L.Ed.2d 112, 92 S.Ct. 1762)]. See also, *Elliott* v. *Superior Court* (1904) 144 Cal. 501, 509-510 [77 P. 1109]; *County of Alameda* v. *Lackner* (1978) 79 Cal.App.3d 274, 281-282 [144 Cal.Rptr. 840]; and *Skolsky* v. *Electronovision Productions, Inc.* (1967) 254 Cal.App.2d 246, 248-249 [62 Cal.Rptr. 91].)

Respondent acknowledges the applicability of the foregoing procedure in proper case, but contends that neither the Attorney General nor the Department had substantive rights which were adversely affected by the judgment in the manner required by the foregoing precedents. Insofar as that contention rests on the theory that the Attorney General and the Department, as an officer and agency of the state, were bound by the stipulations of the district attorney, it is reviewed below. (Part II.)

The trial court made the following observations concerning the Department: "[T]he record before the court suggests that representatives of the Department of Health were participants in this action and working with the Napa County District Attorney in its investigation and prosecution. (See the allegations of Paragraph 9 of plaintiff's amended complaint, page 4, L 5-21). Certainly, if the Department of Health intended to initiate administrative proceedings against defendant in addition to this action for injunctive relief and penalties, this should have been resolved at the time of the negotiations leading to the consent judgment—not after the fact."

The allegations of the amended complaint to which the court referred are set forth in the margin.[6] Section 1293 of the Health and Safety Code provides: "The district attorney of every county shall, upon application by the state department or its authorized representative, institute and conduct the prosecution of any action for violation within his county of any provisions of this chapter." Reference to the provisions of the chapter (§§ 1250-1339.27) indicates that the actions contemplated are misdemeanor prosecutions for a violation of any of the provisions of the chapter (§ 1290), and actions for an injunction against the operation or threatened operation of an unlicensed health facility (§ 1291). No authorization from the Department was necessary to institute the first cause of action for unfair competition under former sections 3369-3370.1

---

[6]"Beginning on or about June 28, 1968, defendant Hy-Lond has existed as a corporation engaged in the business of acquiring, operating and supervising the management of patient-care hospitals. The California Department of Health, through its Health Facilities Licensing Section, has the power to conduct periodic or special inspections of licensed facilities under provisions of Health and Safety Code §§ 1278, 1279, 1419 and 1422. On May 14, 1976, the Health Facilities Licensing Section released results of a May 1976 Napa Hy-Lond 'Statement of Deficiencies and Plan of Correction' (hereinafter referred to as form 2567) containing some eighty-seven non-compliances with state and federal law (attached hereto as Exhibit 'A' and incorporated by reference herein as though fully set forth). On June 16, 1976, pursuant to Health and Safety Code § 1293, the Napa County District Attorney upon authorization from the Department of Health instituted proceedings upon this complaint concerning the care and treatment being afforded patients in all Hy-Lond owned facilities."

of the Civil Code (Bus. & Prof. Code, §§ 17200-17208). Subdivision 5 of section 3369 (Bus. & Prof. Code, § 17204) expressly provided, "Actions for injunction under this section may be prosecuted by . . . any district attorney. . . ." Similarly the authority to prosecute the second cause of action under section 17500 of the Business and Professions Code for false and misleading statements is conferred by similar language found in section 17535 of that code.

The fact that respondent denied the allegation on which the trial court relied is irrelevant. The statement that the original complaint was filed on June 16, 1976, upon authorization from the Department, if itself authorized, would be an admission of that fact. ■ Under general rules of agency, however, the fact of agency cannot be proved by the declarations of the agent. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 81, p. 702.) ■ Be that as it may, the record fails to show that the Department participated in the case made out by the first amended complaint filed 6 months later, other than that it had furnished the district attorney with a comprehensive 24-page report concerning the Hy-Lond Convalescent Hospital in the City of Napa, a copy of which was attached to the amended complaint. It may be inferred, from statements at the hearing on the motion, that a copy of the stipulated judgment was mailed on September 12, 1977, the date it was signed, filed and entered, and that the Department, which received a copy the day before it was filed, had made objections to it. It is clear that the stipulated judgment was never ratified by the Department or the Attorney General. A notice of the intention of the director of the Department to move to vacate the judgment was filed 30 days after the judgment was entered.

Even if we were to infer that the Department authorized the suit, and that it could be deemed the appropriate agent of the state to act as client in the action under the former Civil Code sections, and Business and Professions Code sections, there still was an alleged lack of authority to effect the settlement on the terms embodied in the judgment. ■ Section 283 of the Code of Civil Procedure indicates that the attorney may, on compliance with the section, bind his client in any of the steps of an action or proceeding. It does not, however, give the attorney the right to stipulate away his client's rights. "In California, the law is settled that mere employment of an attorney to represent a client in litigation, while it may carry the power to legally bind the client, does not carry with it the legal right, without the knowledge or consent of the client, to compromise with impugnity that litigation for reasons foreign to the client's substan-

tial rights or best interests. [Citations.]" (*Rothtrock* v. *Ohio Farmers Ins. Co.* (1965) 233 Cal.App.2d 616, 623 [43 Cal.Rptr. 716]. See also, *Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403 [86 Cal.Rptr. 33]; *Roscoe Moss Co.* v. *Roggero* (1966) 246 Cal.App.2d 781, 787 [54 Cal.Rptr. 911]; *Anderson* v. *Joseph* (1956) 146 Cal.App.2d 450, 454 [303 P.2d 1053]; and 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 115, p. 125.)

 The record does not permit the conclusion that the Department had no standing because of its participation in the litigation.

 Nor do we find that the Department stood by and waived its right to bring administrative proceedings. Unless otherwise barred by the statute of limitations or laches, the Department was entitled to await the outcome of the pending litigation, and the effect on respondent's operations, before deciding whether to take proceedings for suspension or revocation of the license of any of respondent's skilled nursing facilities under the provisions of section 1294 of the Health and Safety Code, or for suspension of the participation of any such facility in the medical assistance program under section 14123 of the Welfare and Institutions Code. Section 17205 of the Business and Professions Code, effective January 1, 1978 (Stats. 1977, ch. 299, § 1) states: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." We believe this provision is declaratory of prior law.

 Respondent's remaining pleas attacking the standing of appellants to attack the judgment are inconsistent in nature. On the one hand, it argues that the Attorney General and the Department should not attack the judgment because it would be inequitable to do so inasmuch as the judgment is final and respondent has made so many concessions to the People, as represented by the district attorney. On the other hand, it contends that the benefits it received from the restraints on the Attorney General and the Department can raise no present justiciable controversy, and if they are improper, the question can be resolved if and when either of appellants determines to take action against one of respondent's facilities.

 We find no merit in either contention. When we examine the stipulated judgment by its four corners, it appears that respondent has agreed to injunctive relief ordering it to operate its facilities in a legal

manner as required by applicable laws and regulations. It agreed to pay the equivalent of civil penalties of $2,500 each on 16 of 87 charged violations (former Civ. Code, § 3370.1; see Bus. & Prof. Code, § 17206), with permission to pay the $40,000 in three annual installments. Apparently at the time of the hearing on the motion, one-third had been paid. It also agreed to place certain notices regarding complaints on its premises, to permit the People's representatives to interview its agents, representatives and employees, to permit inspection of its business records, and to make the injunction binding on any successor owner of its facilities if it retained a 51 percent interest in the successor. There was no great sacrifice on respondent's part in the foregoing. If the judgment were vacated, it would presumably be entitled to the return of its $13,333.33, if it did not consent to mere modification. On the other hand, it received absolution for all its past sins, whether fancied or actual, in all 12 of the counties in which it owned facilities.[7] It also received immunity for future actions for unfair competition with respect to future alleged violations of the law and regulations. A criminal action could be maintained for a misdemeanor (Health & Saf. Code, § 1290). Any other proceeding, however, apparently is limited to an action to enforce the judgment by ordinary civil contempt. (See Code Civ. Proc., § 1209, subd. 5, § 1218.) It puts restraints on the institution of such proceedings, and delegates supervision of any such proceedings to the Napa County District Attorney. If respondent received more than the district attorney was authorized to grant, its promise to obey the law and the collateral obligations assumed were not sufficient to equitably estop an attack on the judgment instituted 30 days after its entry.

■ On the other hand, respondent would further postpone any attack on the judgment on the theory that no actual controversy existed at the time of the hearing on the motion. In other words, the validity of the judgment should not be tested until the Attorney General or some other district attorney attempts to bring an action for unfair competition (Bus.

---

[7]The extent of this absolution would depend on the interpretation to be given paragraph 8 of the agreement. (See fn. 2 above.) The restraint on the institution of new actions for unfair competition, "Civil Code § 3369 [now Bus. & Prof. Code, §§ 17200-17204] et seq." apparently includes, as well, former section 3370.1 (now Bus. & Prof. Code, § 17206) providing for civil penalties for unfair competition, and former section 3370.2 (now Bus. & Prof. Code, § 17207) covering civil penalties for violation of an unfair competition injunction. That restraint was to "violations of any acts covered by the provisions of" the judgment, and may reach all such acts past and prospective. The last sentence forecloses administrative remedies "arising out of facts as set forth in plaintiff's first amended complaint." That might technically be limited to the 87 violations at the Napa facility revealed by the report. The sentence continues, however, and adds "in connection with any acts, conduct or omissions occurring at any of defendant's [18] facilities referred to herein."

& Prof. Code, § 17204) or for statutory penalties for violation of the injunction (*id.,* § 17207) with respect to one of the facilities named in the judgment; or, in the case of the Department, until proceedings were actually taken to suspend or revoke the license of any such facility (Health & Saf. Code, § 1294) or to suspend any such facility's participation in the medical assistance program (Welf. & Inst. Code, § 14123). Any such delay would tend to lend more substance to respondent's countervailing theory that the People are equitably estopped to question the authority of the Napa County District Attorney to make a binding agreement *restricting the powers of other state agents and agencies.*

Respondent relies on an analogy from cases dealing with declaratory relief. (See Code Civ. Proc., § 1060; *Merkley* v. *Merkley* (1939) 12 Cal.2d 543, 547 [86 P.2d 89]; *Conroy* v. *Civil Service Commission* (1946) 75 Cal.App.2d 450, 454-456 [171 P.2d 500]; *Frederick* v. *North Side Water Co.* (1942) 49 Cal.App.2d 489, 491 [122 P.2d 59]; *Monahan* v. *Dept. of Water & Power* (1941) 48 Cal.App.2d 746, 750-751 [120 P.2d 730] [disapproved on other grounds in *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 587-588, fn. 7 (100 Cal.Rptr. 16, 493 P.2d 480)]; and 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 716, p. 2338.) This, of course, is not an action for declaratory relief, but a direct attack on a judgment. ■ Even if it were, we note that the purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation. (*Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747].) Also where alternative remedies would be more harsh—here attempts to collect civil damages or administrative sanctions—the courts approve a choice of declaratory relief as a milder remedy. (*Id.,* at p. 761. See also *Chas. L. Harney, Inc.* v. *Contractors' Bd.* (1952) 39 Cal.2d 561, 564 [247 P.2d 913]; and 3 Witkin, *op. cit. supra,* § 717, p. 2339.)

It may be acknowledged that "pursuant to section 902, only an 'aggrieved party' has a right to appeal. As the case law explains, a *'party aggrieved' is one* who has an interest recognized by law in the subject matter of the judgment and *whose interest is injuriously affected by the judgment* [citations]. In order to give rise to an appeal, the *interest of appellant must be immediate, pecuniary, and substantial* and not nominal or a remote consequence of the judgment [citations]." (*Winter* v. *Gnaizda* (1979) 90 Cal.App.3d 750, 754 [152 Cal.Rptr. 700].) ■ The record and statutes involved in this proceeding convince us that both the Attorney General and the Department have an interest in the judgment which satisfies the foregoing test. "All public agencies have an 'interest'

which is 'direct,' in meeting their official responsibilities . . . ." (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 882 [150 Cal.Rptr. 606].) We now examine the merits.

## II

■ Respondent rests on the proposition that the State of California is a single entity and a judgment obtained in its name is final and binding on its agencies. Section 100 of the Government Code provides: "(a) The sovereignty of the state resides in the people thereof, and all writs and processes shall issue in their name. [¶] (b) The style of all process shall be 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority." It does not tell us who is authorized to represent "The People of the State of California" in any particular action, or the limits to which such authority extends.

Government Code section 26500 provides: "The district attorney is the public prosecutor. [¶] He shall attend the courts, and conduct on behalf of the people all prosecutions for public offenses."

■ It is generally recognized that he acts as both a county officer and a state officer in the exercise of the powers for which he has been elected. (See *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653, 657 [83 Cal.Rptr. 41]; *Galli* v. *Brown* (1952) 110 Cal.App.2d 764, 776-777 [243 P.2d 920]; *Sloane* v. *Hammond* (1927) 81 Cal.App. 590, 597-599 [254 P. 648]; and *Singh* v. *Superior Court* (1919) 44 Cal.App. 64, 65-67 [185 P. 985].) It is clear that in conducting the prosecution of violations of state law on behalf of the people, the district attorney is acting as an agent of the state. (See *Sloane* v. *Hammond, supra,* 81 Cal.App. at p. 599; and *Singh* v. *Superior Court, supra,* 44 Cal.App. at p. 66.) In the latter case the court carefully noted, "a district attorney acts for the state within the territorial limits of the county for which he was elected." (*Ibid.*) No one could reasonably contend that in return for a plea of guilty to an offense committed in one county, the district attorney of that county could give an accused immunity from prosecution for a series of similar offenses committed in other counties.

It has generally been observed in connection with the collection of civil penalties by the district attorney that such actions must be expressly authorized. (See *Ventura County* v. *Clay* (1897) 119 Cal. 213, 214-215 [51 P. 189]. See also *County of Sacramento* v. *C. P. R. R. Co., supra,* 61 Cal. 250, 254.)

Here we are called upon to determine the authority conferred on the district attorney by the provisions now found in section 17204 and section 17535 of the Business and Professions Code. Each provides, "Actions for injunction ["pursuant to this chapter" or "under this section"] may be prosecuted by . . . any district attorney." We are asked to determine whether that grant of power embraces the right to restrain the powers of other public officials and agencies. The principal argument advanced by respondent for uncircumscribed authority in the district attorney is the point that since the state as a litigant has power to compromise and stipulate, in order to avoid confusion, parties dealing with the state must be able to negotiate with confidence with the agent authorized to bring the suit, and without the fear that another agency or other state entity might overturn any agreement reached. The litigant should be able to treat with the state as a single entity to avoid being caught in the midst of a power struggle among various state agencies and other entities. As a general proposition that argument has some merit, but when the particular situation shows that the litigant is attempting to secure concessions which would limit the powers of other state agents or entities, which he knows are involved and are not parties to the action, the argument does not survive scrutiny.

In this case the authority of the district attorney may be analogized with that of the district attorney in *County of Sacramento* v. *C. P. R. R. Co., supra.* There, in ruling on the validity of the judgment, the court concluded: "While the District Attorney in his official capacity (subject under certain limitations to the direction of the Attorney General), was authorized to prosecute an action on behalf of the State and county, in the name of the county, for the amounts of taxes due the State and county respectively, the defendant and Clerk of the Superior Court were bound to know the extent of the powers of the District Attorney with respect to the collection of State taxes. The assessment of the State tax could only be made by the State Board of Equalization, and after the tax upon railroad property had been apportioned as required by the Constitution (Article XIII, § 10), there was no power in any officer or Board, except perhaps the State Board of Equalization, to reduce the amount apportioned to any county. The District Attorney, by accepting an offer 'to allow a judgment' for less than the amount fixed by the State Board, could not estop the State from claiming such amount. The rule of presumption as to the authority of an attorney has no application to a public officer whose powers and duties are defined by law, and therefore exactly understood by all parties concerned." (61 Cal. at p. 255.)

So in this case, the judge and all concerned are charged with notice that the Department was authorized and directed by law to control the operation and licensing of the respondent's skilled nursing facilities (Health & Saf. Code, §§ 1254, 1275 and 1294), and that there was no power in the court to restrain the exercise of that power on the stipulation of the district attorney. Similar reasoning applies to the right of the district attorney to surrender the powers of the Attorney General and his fellow district attorneys to commence, when appropriate, actions in other counties under the provisions of law formerly found in Civil Code section 3369, subdivisions 2, 3, 4 and 5 (Bus. & Prof. Code, §§ 17200-17204), section 3370.1 (Bus. & Prof. Code, § 17206), and section 3370.2 (Bus. & Prof. Code, § 17207).

Moreover, we note, as we have set forth above in part I, that an attorney does not have an unrestrained power to bind his client. An agreement surrendering the client's rights requires the consent of the client. Such consent was secured from respondent in this case, but not from the state department charged with regulating respondent's facilities.

A further problem with the stipulation and judgment, as written, is found in the provisions of section 526 of the Code of Civil Procedure and section 3423 of the Civil Code. Each provides that an injunction cannot be granted to prevent the execution of a public statute by officers of the law for a public benefit. In *People* v. *Superior Court* (1967) 248 Cal.App.2d 276 [56 Cal.Rptr. 393], the action was brought for misleading advertising and sought the recovery of civil penalties. (See Bus. & Prof. Code, §§ 17500, 17535, 17536.) The court held that a protective order in discovery proceedings violated the foregoing provisions. It observed: "There can be no doubt that in initiating the action now pending in the respondent court and assisting the Attorney General in gathering evidence, the Commissioner of Corporations is performing an official act that he is required by valid law to perform." (248 Cal.App.2d at p. 282.) So here the district attorney has purported to stipulate to restraints which the court properly could not impose.

The foregoing principles are dispositive of this case. We do not examine, but note, the appellants' further point, that the rule suggested by respondent would put the initiating district attorney in the position of bargaining for the recovery of civil penalties that would flow into his county's coffers, at the expense of surrendering the rights and duties of the state to control the respondent's activities generally through the powers of the Attorney General (other district attorneys) and the Department. We do not determine whether such a situation would violate

rule 7-104 of the Rules of Professional Conduct of the State Bar of California. We are, however, confirmed in our opinion that the powers of the district attorney are limited by the recognition of a possible conflict of interest.

The order appealed from is reversed and the case is remanded for further proceedings in accordance with the views set forth in this opinion.

Elkington, Acting P. J., and Newsom, J., concurred.