[Crim. No. 2184.    In Bank.—November 19, 1918.]

## In the Matter of the Application of J. B. BLOIS for a Writ of Habeas Corpus.

MUNICIPAL ORDINANCES — INSPECTION OF LAUNDRIES — DISCRIMINATORY CHARGES.—Where an ordinance of a municipality provides for the inspection of laundries and other establishments of like character by its health officer and imposes an inspection fee and mileage for the inspector in an amount which is five times as great for one whose laundry is located in another city as for a local establishment, tenfold greater than the known cost of travel by the usual modes of transportation, and more than four times the official mileage fees permitted to be charged by state, county, and township officers, which inspections are to be made once a month, the ordinance is discriminatory and therefore invalid under the constitution.

ID.—SOURCE OF POWER—LIMIT OF POWER.—The source of power of municipalities to enact ordinances such as those for the inspection of laundries is section 11 of article XI of the state constitution, and in the exercise of the powers thus conferred the municipality is limited by the terms of article I, section 12, of the constitution.

ID.—EXTRATERRITORIAL POWERS.—Municipalities may exercise certain extraterritorial powers when the possession and exercise of such powers are essential to the proper conduct of the affairs of the municipality.

APPLICATION for a writ of Habeas Corpus originally made to the Supreme Court to procure the discharge of petitioner, who was convicted of violating an ordinance of the City of Palo Alto. Granted.

The facts are stated in the opinion of the court.

H. A. Gabriel, for Petitioner.

Norman E. Malcolm, and McWilliams & Hatfield, for Respondent.

RICHARDS, J., *pro tem.*—The petitioner applied for a writ of *habeas corpus*, setting forth his conviction in the police court of the city of Palo Alto for the alleged violation of the provisions of an ordinance of said city entitled, "An ordinance for the protection of the health of the people of the City of Palo Alto, providing for the inspection by the health officer of the City of Palo Alto of laundries and other establishments of like character." The petitioner, whose laundry establishment is in the city of San Jose, undertook to solicit laundry work in Palo Alto without first procuring a license so to do, as required by the terms of said ordinance, and his arrest and conviction followed. He seeks his release by this writ upon the ground that said ordinance is invalid, for the reason that the charges therein provided to be paid to the health officer of Palo Alto for inspection and for mileage in going to and coming from the place or places where such inspection is to be made are unreasonable, harsh, discriminatory, oppressive, and prohibitory, and hence in violation of the personal and property rights of the petitioner as guaranteed by the constitution of the United States and of the state of California. The particular portion of the ordinance in question, which the petitioner assails by this writ, are to be found in section 2 thereof, which reads as follows:

"The Health Officer of the City of Palo Alto is hereby authorized to charge a fee for such inspection which shall be in the sum of Three ($3.00) dollars for the time consumed by him in making said inspection, together with mileage at the rate of Thirty (30) cents per mile and for each mile actually traveled by him from his said office in Palo Alto to the place where such inspection is to be made and return. Said inspection is to be made at least once every month, and no such permit or license shall be issued for a longer period of time than one (1) month.

"The Board of Public Safety shall not issue any permit or license hereunder until all fees due hereunder for inspecting

the plant or place of laundering or washing of the laundry or other establishment at which the person applying for such permit or license proposes to have such laundering or washing. done, are paid. All fees and mileage shall be paid into the General Fund for the use of the Board of Public Safety.''

Upon the hearing and in the briefs which followed the petitioner's assault upon these provisions of the ordinance was chiefly directed against that portion thereof providing for the mileage to be paid the inspector for traveling to and from the place of location of the laundry, which by the terms of the ordinance was to be visited at least once a month in the course of his required inspection. The mileage charge thus objected to is thirty cents a mile both ways, which, in the case of the petitioner, amounted to the sum of not less than $12 per month, exclusive of the stated fee of three dollars for the inspection itself. These mileage and inspection charges were to be paid into the general fund of the city treasury for the use of the board of public safety. The effect of these mileage and inspection charges, the petitioner contends, is to require of him a gross fee for the privilege of soliciting laundry work in the city of Palo Alto of at least $15 monthly, as compared with the charge of three dollars required of all proprietors of laundries located within the said city. It is this which constitutes the discrimination of which the petitioner complains and it is the fact that these inspections, with the consequent fee and mileage charge, may be repeated as often in each month as the inspector chooses to make them, which, according to the petitioner's contention, renders the ordinance not only obviously and harshly discriminative in favor of local laundries, but also practically prohibitive upon the solicitation of laundry work by outside laundries within said city. The distance from Palo Alto to San Jose, where the petitioner's laundry is located, is conceded to be about twenty miles. It is a matter of public knowledge that between these two cities there are two railway systems whose established passenger rates are not to exceed three cents per mile, and which affords opportunities for hourly travel between them, and that there is also a motorcar service of one or more companies giving even more frequent service and at somewhat lower rates. The ordinance, in providing for a mileage rate of thirty cents per mile both ways by the inspector, thus imposes upon the laundry owner

in San Jose a mileage fee of $12 for the traveling expenses of the inspector, for which same mileage of travel by the same means of transportation the traveling public pays not to exceed $1.20, thus making the health inspector's mileage fees ten times that which he would be required to pay for his transportation between said cities by the ordinary means of travel. A further comparison of these mileage rates with those chargeable by other public officers under the state law is enlightening. Sheriffs are allowed mileage at the rate of fifteen cents per mile one way when travel can be made by rail. (Pol. Code, sec. 4300b.) Constables are allowed mileage at the rate of twenty-five cents one way in their township, fifteen cents out of their township, but in the county, and five cents both ways out of the county. (Pol Code, sec. 4300d.) Jurors are allowed fifteen cents per mile one way. (Pol. Code, sec. 4300f.) Witnesses are allowed ten cents per mile one way. (Pol. Code, sec. 4300g.) It will thus be seen that the mileage charge permitted to the health inspector under this ordinance is not only out of all proportion to the actual cost of ordinary travel in that region, but is also so far in excess of that allowed by the state laws to other public officials as to compel the conclusion that it was imposed for other purposes than that merely of a mileage fee. The respondent perceives this and seeks to meet it by urging that the time occupied by the health inspector in travel to and from the place of inspection is to be taken into account in determining the reasonableness of the charge. There is some force in this argument, but not enough to justify the charge, since the fee allowed the inspector for making the inspection is to be taken as ample compensation for the time actually consumed in making it and the time occupied in going to and fro between the two cities, as a matter of common knowledge, by train or bus is less than an hour each way, for which the imposition of a charge of $10 or more would be clearly exorbitant.

The source of the power of municipalities to enact ordinances of the general character of that here under review is to be found in article XI, section 11, of the state constitution, reading as follows:

"Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." In the exercise of the powers thus conferred the municipality

is limited by the terms of article I, section 21, of the constitution, which provides:

"No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

This latter section of the constitution has been given direct application to statutes and ordinances which have been enacted and sought to be enforced either by the state or by political subdivisions thereof, and in which attempts have been made to discriminate in favor of or against particular persons or classes of persons as to whom no reasonable basis of discrimination can be seen to exist; and in all such cases the courts of this state have uniformly held such attempted legislation to be void. (*Ex parte Frank,* 52 Cal. 606, [28 Am. Rep. 642] ; *In re Smith,* 143° Cal. 368, [77 Pac. 180] ; *Ex parte Dickey,* 144 Cal. 234, [103 Am. St. Rep. 82, 66 L. R. A. 928, 77 Pac. 924] ; *Ex parte Hayden,* 147 Cal. 649, [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315] ; *Ex parte Foley,* 172 Cal. 744, [Ann. Cas. 1918A, 180, 158 Pac. 1034] ; *In re Hines,* 33 Cal. App. 45, [164 Pac. 339].) The respondent herein concedes the force and effect of the foregoing decisions as applied to statutes and ordinances which are in the nature of revenue measures, but contends that they are not to be given full application to ordinances enacted under the health and police powers of municipalities, and which have for their purpose the regulation of those classes of business which are peculiarly within the range of these powers. The respondent also insists that in relation to such establishments as laundries, dairies, bakeries, and like institutions located outside of municipalities, but distributing commodities within them, which, if not sanitary in the methods of their creation or manipulation, might be the means of spreading infection or disease, the municipality as a proper health precaution may exercise the right of inspection of such establishments wherever located, with the consequent right of making a reasonable charge for the fees and mileage of its inspector, and that ordinances thus providing for such extra-territorial inspection of such institutions should be sustained, even though the reasonable cost of such inspection when imposed upon such institutions lying at some considerable dis-

tance from the municipality itself would result in placing an added burden upon these inspected places as a condition of their doing business within it, depending as to its amount upon their distance from the municipality adopting such an ordinance as a health measure. We are disposed to agree with this contention to the extent above indicated and to concede that municipalities may exercise certain extraterritorial powers when the possession and exercise of such powers are essential to the proper conduct of the affairs of the municipality. As for example, this court has held that a municipality has power to construct and maintain a system of waterworks outside of its boundaries for the supply of its inhabitants with water, and that it might even go to the extent of supplying water to persons living without the limits of such municipality. (*South Pasadena* v. *South Pasadena Canal Co.*, 152 Cal. 579, [93 Pac. 490].) So, also, it has been held that a city, in order to protect the health and property of its citizens from the effects of overflowing of a stream passing through such city, might go beyond the corporate limits and construct a ditch for the diversion of such overflow waters. (*Willson* v. *Boise City*, 6 Idaho, 391, [55 Pac. 887].) Again, with more immediate application to the case in hand, it has been decided that a city council might properly pass an ordinance providing for the inspection of dairies and dairy herds outside of the city, but from which it was proposed to supply milk to its inhabitants. (*State* v. *Nelson*, 66 Minn. 166, [61 Am. St. Rep. 399, 34 L. R. A. 318, 68 N. W. 1066].) In none of these cases, however, has the question as to the right of reasonableness of fees or mileage charges for the making of such inspections as are provided for in ordinances of the kind here under review been involved, nor has our attention been called by the respondent to any case where such charges, so clearly discriminative as those involved in the case at bar, have been sustained. The strongest reliance of the respondent is upon the case of *County of Plumas* v. *Wheeler*, 149 Cal. 758, [87 Pac. 909], involving the validity of an ordinance exacting a license fee for conducting the business of raising and pasturing sheep in Plumas County, the license fee charged being ten cents for each sheep so raised or pastured. In that case, however, no question of discrimination arose, and this court very properly held that it could not be determined from the

face of the ordinance itself that the charge imposed was so clearly excessive or grossly disproportionate to the expense incurred by the county in the regulation of the business affected as to render the enactment void upon its face. The distinction between that case and the case at bar consists in the fact that no question of discrimination between persons or places of business was involved in the former case, and also in the fact that the ordinance under review in that case did not upon its face furnish any standard by which the reasonableness or unreasonableness of its charges could be determined. In the instant case both of these elements are present. The petitioner, as the representative of a laundry establishment located at San Jose, is required to pay for the permit to solicit washing for his laundry a sum five times as great as that charged the solicitor for a local establishment. This increase over the local charge is made up of mileage fees which are to be charged at a rate not only tenfold greater than the known cost of travel by the usual modes of transportation between the two cities, but that is also more than four times the official mileage fees permitted to be charged by state, county, and township officers. The conclusion is irresistible that the mileage fees to be exacted for the inspection of laundries outside the limits of Palo Alto are unreasonable in amount, measured by any of the known standards for determining the reasonableness of charges of like character; and that since they are to be incurred, charged, and collected regularly and at least once a month from the representatives of laundries located elsewhere than within the municipality, but seeking to collect and distribute washing within its limits, the imposition of an exorbitant charge works a substantial discrimination as between nonresident and local establishments, each entitled to solicit and do business within said municipality upon an equal basis, such as is forbidden by the express terms of the constitution, to which reference has above been made. These provisions of the ordinance, being inseparable from the main body thereof, it follows that the ordinance is invalid and hence that the petitioner is entitled to his discharge. So ordered.

Melvin, J., Sloss, J., Wilbur, J., and Lorigan, J., concurred.