**People of the State of CALIFORNIA, and City of Lodi, California, Plaintiffs,**

v.

**M & P INVESTMENTS, a California Partnership, et al., Defendants.**

**And Related Cross–Claims, Counterclaims, Third Party Claims and Fourth Party Claims.**

**No. CIV. S–00–2441 FCD/J.**

United States District Court, E.D. California.

Filed: May 3, 2002.

Randall A. Hays, City Attorney, City of Lodi, California, Michael C. Donovan, Cecelia C. Fusich, Assistant City Attorneys, Envision Law Group, LLP, Lafayette, CA, for Plaintiffs.

Lori J. Gualco, Attorney at Law, Sacramento, CA, Steven J. Meyer, Steven H. Goldberg, Michael N. Mills, Downey, Brand, Seymour & Rohwer, LLP, Sacramento, CA, for Defendants.

### MEMORANDUM AND ORDER

DAMRELL, District Judge.

On April 19, 2002, the court held a hearing on the various jurisdictional and other issues presented by the court's January 28, 2002 order. In light of the granting of plaintiff People of the State of California's (the "Plaintiff People") motion to dismiss the Resource Conservation and Recovery Act ("RCRA") claim, many of the issues presented in the January 28 order are now moot. Accordingly, this order addresses only those issues unaffected by the motion to dismiss. The resolution of these issues,

however, will have a significant impact on this case.

## BACKGROUND

While this case was filed in November 2000, the starting point of the litigation particularly relevant to this hearing began in May 2001. At that time, the Plaintiff People and co-plaintiff City of Lodi (the "City") (sometimes collectively referred to herein as "plaintiffs") filed a motion to dismiss the first amended counterclaim of defendants Guild Cleaners, Inc. and Jack Alquist (collectively, "Guild"), which included Guild's claim under RCRA against the City. On June 19, 2001, the court granted the motion, in part, finding (among other things) that Guild's RCRA counterclaim against the City under § 7002(a)(1)(B) was barred because the State of California (i.e., the Plaintiff People) was diligently prosecuting this action.

Also in June 2001, plaintiffs filed a motion for docket preference, seeking to schedule this case in an expedited fashion due to the nature of the Plaintiff People's claims (particularly, abatement of a *public* nuisance). Ultimately, the court scheduled the case on its own timetable, and denied plaintiffs' motion as moot. *See* Pretrial Scheduling Order, filed Sept. 26, 2001.

Thereafter, in August of 2001, the City issued a "time critical abatement action order" ("AAO"), pursuant to a provision of the City's municipal law (referred to as "MERLO") against certain defendants in an effort to force the named defendants to engage in an immediate investigation and remediation of the Lodi Area of Contamination.[1] Defendants brought a motion to

stay enforcement of the AAO, which the court granted on August 28, 2001. Mem. & Order, filed Aug. 28, 2001. The court held that the AAO contravened the jurisdiction of the court, and under the All Writs Act its enforcement was properly stayed.[2]

Shortly after that decision, the Plaintiff People filed, in September 2001, an application for a temporary restraining order ("TRO") against Guild[3] seeking the same relief requested in the AAO. The court denied the application for a TRO finding that the Plaintiff People had unjustifiably delayed bringing the request for a TRO. Mem. & Order, filed Sept. 6, 2001. The Plaintiff People then filed a motion for preliminary injunction against Guild. That motion was extensively briefed by the parties between September 2001 and December 2001. During the course of those proceedings and with the parties' consent, the court appointed an expert to assist the court in reviewing the technical issues presented by the motion.

Also in September, defendant Odd Fellows Hall Association of Lodi, Inc. ("Odd Fellows") filed a motion to disqualify plaintiffs' counsel from simultaneously representing the Plaintiff People and the City. Odd Fellows argued that such representation presented a conflict of interest because the City Attorney of Lodi cannot represent the City, a party alleged to be responsible for the public nuisance condition, while at the same time represent the Plaintiff People, who is suppose to be the neutral, public prosecutor of the alleged harm. In other words, the interests of the City in avoiding liability for the cleanup of

1. Said Area is defined in plaintiffs' First Amended Complaint, filed May 25, 2001.

2. Plaintiffs appealed this decision, and the matter is currently pending before the Ninth Circuit. *See* Ex. A to Req. for Jud.Not. filed in Supp. of Pl. People's Reply on Mot. to Dismiss, filed April 12, 2002.

3. The motion was also filed against the Estate of Dwight Alquist, deceased who is also sometimes referred to herein collectively as "Guild."

the nuisance are directly at odds with the interests the City Attorney seeks to vindicate in the name of the People, namely the prosecution of those allegedly responsible for the contamination. Without reaching the merits of the purported conflict, the court denied Odd Fellows' motion on the ground that as a third-party (Odd Fellows was neither a former or current client of plaintiffs' counsel), it lacked standing to assert a conflict of interest. Mem. & Order, filed Nov. 13, 2001.

On November 26, 2001 the court held a tutorial with the court expert and the parties regarding the technical issues involved in the motion for preliminary injunction. The court's expert, Dr. Michael Kavanaugh, and the parties' various consultants gave presentations and were questioned by the court and each other. Significantly, Megan Cambridge of the California Department of Toxic Substances Control ("DTSC") appeared, gave testimony, and questioned the various presenters.

The hearing on the motion for preliminary injunction took place on December 14, 2001. At the hearing, the court orally ruled that the Plaintiff People was entitled to a preliminary injunction against Guild under RCRA and state law. One of the primary bases for the ruling was the court's treatment of the Plaintiff People as an "innocent" party, in that no claims were asserted against the Plaintiff People. The court indicted that it would issue its written order regarding entitlement to an injunction forthwith. However, the court requested further briefing on the form of the proposed preliminary injunction. A further hearing on that issue was scheduled for January 25, 2002.

Then, on January 23, 2002, staff legal counsel for the DTSC and the Regional Water Quality Control Board ("RWQCB") (collectively, the "State Agencies")[4] sent a letter to plaintiffs and Guild asserting the State Agencies' position that the court did not have jurisdiction over the agencies.[5] At the request of the State Agencies, the letter was transmitted to the court.

In light of the letter, on January 24, 2002, the court continued the hearing on the form of the injunction and directed the parties to appear on January 25 to discuss the jurisdictional implications of the State Agencies' letter. Mem. & Order, filed Jan. 24, 2002. The court specifically ordered the authors of the letter to appear, as well as a representative of the Attorney General's office. They did so. Following the hearing, the court issued an order requiring the parties[6] to respond to a series of questions:

(1) Is the State of California a party to this suit?

(2) Does California Code of Civil Procedure § 731 authorize a City Attorney to bring an action in federal court on behalf of the State of California? Specifically, does it authorize a City Attorney to bring such a suit under the Resource Conservation and Recovery Act of 1976 ("RCRA") § 7002 (42 U.S.C. § 6972)?

(3) If California Code of Civil Procedure § 731 authorizes the City Attorney of Lodi to bring an action on behalf

---

4. Said State Agencies operate under the authority of the Governor of the State of California.

5. Both the Plaintiff People and Guild's proposed preliminary injunctions contemplated the DTSC serving as the lead enforcement agency supervising compliance with the injunction.

6. At the hearing, the Attorney General's Office and the State Agencies (sometimes collectively referred to herein as the "Attorney General") agreed to file amicus curiae briefs. They filed a joint brief on March 12, 2002.

of the People of the State of California, has the State consented to federal jurisdiction when suit is brought in federal court in the name of the "People of the State of California?"

(4) Does California Code of Civil Procedure § 731 specify the State of California's express intention to waive Eleventh Amendment immunity?

(5) Has the State of California waived its sovereign immunity by its conduct in this litigation, in particular through the conduct of the DTSC?

(6) If the State of California is not a party to this case, then who is the moving party in the motion for preliminary injunction and what is that party's standing to bring the motion?

(7) What effect, if any, does the Cooperative Agreement between DTSC and the City have on these issues?

(8) In light of the DTSC and RWQCB's letter, can the City Attorney continue to represent both the People of the State of California and the City? Is there a conflict of interest? If so, what is the nature of the conflict?

(9) What does DTSC and RWQCB mean when they state in their June 23, 2002 letter "for the most part all that is required is rewording of the order so as to place obligations on Guild rather than on DTSC or the RWQCB?"

The parties were also permitted to raise any issue not addressed by the above

questions which affected the determinations. Because of the importance of the above issues, the court stayed its oral ruling on the Plaintiff People's motion for preliminary injunction,[7] and continued various other pending motions. Mem. & Order, filed Jan. 28, 2002.

## ANALYSIS

Because the court grants the Plaintiff People's motion to dismiss the RCRA claim (see Mem. & Order, filed April 23, 2002), several issues raised above are now moot (question numbers 2, 7, and 9).[8] Also, for similar reasons, the court does not consider whether there has been a waiver of sovereign immunity in this case (either by the assertion of a RCRA claim in federal court in the name of the "People of the State of California" [via CCP § 731] or by the DTSC's conduct in this litigation) (question numbers 3, 4, and 5). Such a ruling on waiver of sovereign immunity is premature at this time since no party has sued the "People of the State of California," the "State of California" or any agency or instrumentality of the State of California. See Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (the question of whether a State has waived its sovereign immunity arises as a shield after the improper assertion of claims against a State in federal court).[9] Because of this ruling, representatives of the Attorney General's Office and the State Agencies are no longer required to attend hearings in this case.

7. The court's written order on the motion had not yet been filed.

8. The court notes that it may be necessary to decide whether California Code of Civil Procedure section 731 ("CCP § 731") permits a city attorney to bring a RCRA claim in the name of the People of the State of California to determine if sanctions should be imposed on plaintiffs' counsel under 28 U.S.C. section 1927. See Order to Show Cause, filed April 23, 2002.

9. Despite this ruling, the court nonetheless notes that the conduct of DTSC and plaintiffs' counsel left the unmistakable impression that DTSC actively participated in the prosecution of plaintiffs' case. As Guild argues:

A candid review of the hearings held in this action since August 2001 demonstrates that DTSC's legal counsel was present at each hearing and DTSC was not only complicit in the City's representations concerning its authority to bring this action in the name of

While the court does not consider the above questions at this time, it nonetheless must determine who is the real party in interest asserting the Plaintiff People's remaining state law nuisance claims (questions numbers 1, 6, and 8).[10] CCP § 731 [11] permits a city attorney to bring an action to abate a public nuisance *under state law* "in the name of the people of the State of California." The question presented here, however, is who is the plaintiff "People of the State of California?" Is it a party separate and distinct from the City itself?

### (1) *The Plaintiff People's State Law Nuisance Claims*

Preliminarily, the court briefly reviews the course of events which brought this case to this point. Leading up to the State

Agencies' January 23, 2002 letter, the court treated the Plaintiff People as the State of California. Indeed, orders were issued in reliance on that finding. *See* June 19, 2001 Mem. & Order, dismissing Guild's RCRA claim against the City; December 14, 2001 Oral Ruling, granting the Plaintiff People's motion for preliminary injunction against Guild. Such treatment of the Plaintiff People was the direct result of plaintiffs' counsel's representations to this court and the involvement of the DTSC in all aspects of this litigation. *See* Guild's JX Brief at 18–22.[12]

At the December 14, 2001 preliminary injunction hearing, the court expressed its understanding that the State of California was the moving party on the motion. *Id.* at 23 (*see* testimony cited below under

the State, but that DTSC also was an active participant in all matters before the Court, as well as Plaintiff's legal strategy and actions.
Guild's Jurisdictional Brief ("Guild's JX Brief"), filed March 12, 2002, at 18.

10. In the first amended complaint the Plaintiff People asserts the following claims for relief: (1) abatement of a condition that may present an imminent and substantial endangerment to health or the environment under RCRA Section 7002(a)(1)(B); (2) abatement of a public nuisance pursuant to CCP § 731; and (3) abatement of a nuisance *per se* under state and municipal law (namely, the Comprehensive Municipal Environmental Response and Liability Ordinance ("MERLO"), Lode Mun.Code section 8.24.010 *et seq.*). The RCRA claim has now been dismissed. The City asserts claims for (1) recovery of response costs pursuant to California Water Code section 13304(c); and (2) recovery of abatement costs pursuant to MERLO. *See* First Am.Compl., filed May 25, 2001.

11. Section 731 provides in pertinent part:

A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as the same is defined in section thirty-four hundred and eighty of the Civil Code, by the district

attorney of any county in which such nuisance exists, or by the city attorney of any town or city in which such nuisance exists, and each of said officers shall have concurrent right to bring such action for a public nuisance existing within a town or city, and such district attorney, or city attorney, of any county or city in which such nuisance exists must bring such action whenever directed by the board of supervisors of such county or whenever directed by the legislative authority of such town or city.

12. For example, at the August 21, 2001 hearing regarding the AAO, plaintiffs' counsel represented that the AAO was issued because in the determination of the City *and* the DTSC such action was necessary. *Id.* at 18. Regarding the TRO, plaintiffs' counsel stated on August 31, 2001 that "[b]oth State and City agencies were consulting with each other" and approval was obtained from "the executive levels of government." *Id.* at 19. He stated further that this action was a "consolidat[ed] ... governmental response." *Id.* at 20. Further, on September 14, 2001, plaintiffs' counsel represented that it was DTSC who had the "responsibility and authority" over the investigation of the Site. *Id.* Finally, on December 14, 2001, plaintiffs' counsel assured the court that the "dialog between the City and the State is not even weekly, your Honor, it is nearly daily." *Id.* at 22.

section 3). Yet, neither plaintiffs' counsel nor the DTSC's counsel, who was also present at the hearing, objected to this expression of the court's understanding.

Consistent with this acquiescence by silence, on January 11, 2002, the Plaintiff People filed a brief in support of its revised, proposed preliminary injunction which stated that the proposed injunction represented the *collaborative* efforts of plaintiffs' counsel *and* the DTSC. *See* Pl.'s Brief re: Form of Injunction, filed Jan. 11, 2002. Additionally, the proposed injunction provided that DTSC would serve as the lead enforcement agency ensuring compliance with the terms of the injunction, and further *enjoined* DTSC in various aspects of its duties in that capacity. *See* Pl.'s Lodged Order, filed Jan. 11, 2002. It was not until January 23, 2002, two days before the hearing set on the form of the injunction, that, in a letter submitted to the court, DTSC objected to the proposed injunction and the court's prior treatment of the Plaintiff People as the State of California. The letter was especially surprising in light of DTSC's open involvement throughout the course of the litigation, including the apparent cooperative drafting of the proposed preliminary injunction, which expressly sought to impose this court's jurisdiction over DTSC. *See* Reporter's Transcript, January 25, 2002, at 4.

In light of the letter, the court ordered a representative of the Attorney General's Office and the authors of the letter to appear at the January 25 hearing. At the hearing, Donald Robinson, Assistant Attorney General, appeared on behalf of the State of California, and Derek Van Hoorn, Nicholas Stern, and Frances McChesney

appeared on behalf of the State Agencies. At the hearing, for the first time, the court was informed by the Assistant Attorney General and the State Agencies' counsel that the City Attorney of Lodi could not represent the State of California by virtue of CCP § 731, and thus, the State of California was not a party to this action. At the hearing, plaintiffs' counsel disagreed, arguing that he had a "right" and "obligation" (because the City Council of Lodi directed that the action be filed) under CCP § 731 to bring this case on behalf of the People of the State of California. Because of this disagreement, among other things, the court issued its January 28 order requesting briefing on the above issues.

Now, in response to the January 28 order, plaintiffs' counsel expressly concedes, in the jurisdictional brief, that he does not represent the State of California. Indeed, all parties and the Attorney General agree that the City Attorney of Lodi (by virtue of CCP § 731) does not represent the State of California in an action filed "in the name of the people of the State of California" to abate a public nuisance under state law. In other words, the City Attorney of Lodi's authority to prosecute a public nuisance under CCP § 731 does not elevate him to the status of agent for the State, with the full authority commensurate with such a position. *See People v. City of Los Angeles*, 160 Cal. App.2d 494, 500, 325 P.2d 639 (1958) (holding that "the only authority given to the city council of Manhattan Beach or its city attorney by section 731 of the Code of Civil Procedure is to bring an action to abate a public nuisance existing within that city").[13]

13. It is important to note that city attorneys, by definition, are not state officials, despite the occasional grant of authority to prosecute violations of specific state laws. *See generally* Cal.Govt.Code § 41801 et seq. The primary function of a city attorney is to "advise city officials in all legal matters pertaining to city business," not to prosecute violations of state law. Cal.Govt.Code § 41801.

Yet, while acknowledging that it does not represent the *State* of California, the Plaintiff People contend nevertheless that it represents "all of the people in the State of California." Pls.' Jurisdictional Brief ("Pls.' JX Brief"), filed Feb. 19, 2002, at 3–5. The Plaintiff People attempt to distinguish between an action brought on behalf of the "Executive Branch" of the State (which the Plaintiff People explains would be an action on behalf of the "State"), and this action which is brought on behalf of the "State Sovereign"—the *"people* of the State of California." In the Plaintiff People's view, when a city attorney acts pursuant to CCP § 731 he is acting to abate a public nuisance on behalf of the public at large; in doing so he is exercising the "sovereign" will of the "people," not the will of the "Executive Branch of State government." [14]

To *require* that the "will of the people of California" be placed in the hands of the City Attorney of Lodi when the elected Governor and Attorney General have decided not to exercise their authority, and, expressly oppose the City Attorney's assumption of such authority, seems a bizarre notion. Indeed, to construe CCP § 731 to mean that a city attorney *must act* on behalf of a separate party to wit: "all of the people of California" *in opposition* to the "State of California" turns the idea of representative government and the State Constitution on its head.

In response, the Attorney General and Guild's analysis of CCP § 731 yields a more rational result. The Attorney General asserts that "it is the City that is the plaintiff in this suit. To the extent the City represents the "people" as well [by virtue of CCP § 731], that representation extends no further than those persons who reside in the City of Lodi." Amicus Curiae JX Brief, filed March 12, 2002, at 2 (emphasis in original omitted). Relying primarily on the case of *People v. Hy–Lond Enterprises, Inc.*, 93 Cal.App.3d 734, 155 Cal.Rptr. 880 (1979), the Attorney General contends that the geographical boundaries of the city represent the jurisdictional limits of a city attorney; therefore, a city attorney cannot represent the State or the "people of the State" as a separate party apart from the city. [15]

Rather it is the Attorney General who is designated by the California Constitution as the "chief law officer of the State." Cal. Const., Art. V, Sec. 13. It is the Attorney General who "has charge, as attorney, of all legal matters in which the *State* is interested" and is directed to "prosecute or defend all causes to which the *State*, . . . is a party." Cal.Govt.Code §§ 12511, 12512 (emphasis added). Moreover, absent the Attorney General's consent, a city attorney cannot act as the legal counsel of any state agency. California Government Code § 11042 provides that "[n]o state agency . . . shall employ any legal counsel other than the Attorney General." *See also* Cal.Govt Code § 11040 (the consent of the Attorney General is required before a state agency can employ counsel "in any matter of the *State* "). Under these statutes, the Attorney General argues that the only "acceptable" interpretation of CCP § 731 is that when suit is brought to abate a public nuisance under the statute, a city attorney acts only as the legal representative of his city's residents.

Similarly, Guild contends that the city is the real party in interest when suit is brought under CCP § 731. Relying on the case of *People v. City of Los Angeles,*

---

**14.** According to the Plaintiff People, because the state coffers are not exposed, the court has no jurisdiction over the State of California as it is not a party to the suit.

**15.** It is clear from the amicus curiae brief, that it is the Attorney General's position that the State of California and the "People of the State of California" are one in the same.

160 Cal.App.2d at 494, 325 P.2d 639, Guild asserts that when the City Attorney of Lodi files suit in the name of the People of the State of California, the only interests he can represent are the City's, not the State's. Guild's JX Brief at 9.[16]

While there is no case law (perhaps understandably) directly addressing this issue, certain cases are instructive. In *People v. City of Los Angeles*, the City Attorney for Manhattan Beach filed a lawsuit under CCP § 731. One cause of action asserted in the name of "the People of the State of California" sought to restrain the City of Los Angeles from violating a judgment entered against the City, in a prior action brought by the Attorney General. The court held that the City Attorney of Manhattan Beach could not enforce the judgment obtained by the Attorney General, even if the City Attorney sued in the name of the "People of the State of California" under CCP § 731. 160 Cal. App.2d at 500, 325 P.2d 639. The City of Manhattan Beach was not a party to the prior action. This finding suggests that even when a city attorney files suit "in the name of the people of the State of California" under CCP § 731, he represents *only* the interests of the city he serves, not the State.

Further, in *Hy–Lond*, the District Attorney of Napa County filed suit "in the name of the People of the State of California" against a corporation that operated several nursing homes in California, and then subsequently submitted a stipulated judgment settling the matter. The stipulated judgment covered all of defendant Hy–Lond's facilities in the State and included express restraints on the type of enforcement actions that could be brought against those facilities by the Department of Health Services and the Attorney General. The judgment also absolved Hy–Lond of all past violations of law. No state agency or prosecutor approved the restrictions on its jurisdiction to enforce the law. Concerned that the language in the stipulated judgment unlawfully purported to bind state agencies and officials, the Attorney General moved to set aside and vacate the judgment. 93 Cal.App.3d at 740–43, 155 Cal.Rptr. 880.

In reversing the trial court's denial of the motion, the appellate court held that the grant of prosecutorial power to district attorneys does not include the right to restrain the powers of other public officials and agencies. The court recognized that a district attorney acts as both a county officer and a state officer, and that "in conducting the prosecution of violations of state law on behalf of the people, the district attorney is acting as an agent of the state." *Id.* at 751, 155 Cal.Rptr. 880. The court found however that the district attorney's authority did not extend so far as to permit him to compromise and bind the State's enforcement authority. *Id.* at 747–48, 155 Cal.Rptr. 880.

Although not involving CCP § 731, *Hy–Lond* instructs that there are limitations on public prosecutors' (like district attorneys and city attorneys) authority *vis a vis* the State of California. As stated by Guild in its brief, a city attorney has a mere "slice of state power" by virtue of CCP § 731 (*see* Guild's JX Brief at 7); despite being granted the authority to bring an action *in the name of the People of the State*, a city attorney does not represent the State with the full power accorded that position. *See Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S.

---

**16.** Various defendants joined in Guild's jurisdictional brief, including: Estate of Frank Paul, deceased; Estate of Dwight Alquist, deceased; Victor Leonardini; Delano Gotelli; David Mustin; M & P Investments; and Estate of Alvin Allmendinger, deceased. *See* Joinders, filed March 12 and 14, 2002.

391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (finding that political subdivisions, which have a "slice of state power" are not protected by the Eleventh Amendment). Specifically, the court's findings in *Hy–Lond* indicate, like in the *People v. City of Los Angeles,* that a city attorney's authority is limited to the geographical boundaries of the constituency which he or she represents. *See also City of Oakland v. Brock,* 8 Cal.2d 639, 641, 67 P.2d 344 (1937) (geographical boundaries of the city represent the jurisdictional limits of a city attorney).

The court finds below that there is no rational support for the Plaintiff People's proposition, to the contrary, that under CCP § 731 a city attorney represents the "People of California" as a separate party plaintiff apart from the co-plaintiff City.

First, the language of the statute limits the action which may be taken by a city attorney "in the name of the people of California" to abate a nuisance condition which exists within the city. Arguably, however, the statute recognizes that the eradication of a public nuisance is a benefit which may accrue to California citizens who reside outside as well as within a particular city. Nevertheless, while the statute gives a city attorney the authority to act *for the benefit of* the people of California, it does not expressly confer upon the city attorney authority to *represent* all Californians as an entity separate and apart from the city itself. *See People v. City of Los Angeles,* 160 Cal.App.2d at 500, 325 P.2d 639. More importantly, though there may be other potential beneficiaries, the direct beneficiaries of the action *must* be the residents of the city whom the city attorney represents, otherwise, the city attorney would not have jurisdiction to act in the first instance. *See City of Oakland,* 8 Cal.2d at 641, 67 P.2d 344. Therefore, the reference to "the

people of California" likewise must be delimited.

Second, the court finds the Plaintiff People's argument that the "State Sovereign," the *people* of the State of California, is a recognizable entity/person separate from the *State* of California, itself, is without merit. The citizens of the State of California constitute the *State,* as the residents of Lodi (also California citizens) constitute the City of Lodi. In other words, in considering the question of who is the plaintiff when suit is brought under CCP § 731 "in the name of the people of the State of California," there are only *two* possible conclusions: (1) the plaintiff is the city which the city attorney represents or (2) the plaintiff is the State of California (a position no one urges herein). Nevertheless, the Plaintiff People assert a third option—that the plaintiff is simply "all of the people" in the State (separate and apart from the State and the City of Lodi). Such a third option does not withstand rational scrutiny of the statutory language as set forth above, and, if allowed, poses serious practical and ethical problems, which could not have been intended by the legislature in enacting the statute.

These problems were most clearly demonstrated at oral argument when the Plaintiff People's counsel acknowledged that the City Council of Lodi directed the filing of this action (*not the people of California);* the City is financing this litigation (*not the taxpayers of California);* and that any claim asserted against the "People of California" would be directed against the City, since service would have to be made on the City. In addition, an award of damages, costs or sanctions against the "People of California" would be paid by the City, and, most importantly, the City (*not the people of California* ) would be subject to any order of injunctive relief. In sum, it seems absurd to argue that the state

legislature intended that under CCP § 731 a city attorney represents the "People of California" as a separate, albeit "virtual," client when the "actual" client, the city, alone, authorizes, directs, finances, and assumes complete responsibility for the litigation in which the State of California is not a party and refuses to participate. Rarely has the phrase "real party in interest" seemed *so apropos.*

Finally, were the court to find that the City Attorney of Lodi represents "the people of California," the injunction sought in this case may well have preclusive effect on the State of California, including state agencies and state prosecutors, and other local prosecutors who likewise have the statutory authority to bring actions "in the name of the People." Amicus Curiae JX Brief at 6; *see e.g.,* Cal.Govt.Code § 12607 (Attorney General has the authority to bring an action "in the name of the people of the State of California" to protect the "natural resources of the state from pollution, impairment, or destruction"). Clearly, no fair reading of CCP § 731 would support such a chaotic result.

For all of these reasons, the court finds that under CCP § 731 the City Attorney in this case has but one client—the City of Lodi. The court further finds that the real party in interest asserting the Plaintiff People's state law nuisance claims is the City of Lodi.[17]

## (2) *Effect of Decision that City is the Real Party in Interest*

Because the court finds that the City is the only real party in interest bringing this case, it must decide whether to reconsider certain prior orders, including the oral ruling granting the Plaintiff People's motion for preliminary injunction and the order dismissing Guild's citizen suit against the

City under RCRA § 7002(a)(1)(B). Both of these orders treated the Plaintiff People as the State of California.

As noted above, the course of conduct in this case by the Plaintiff People's counsel is of concern to the court. In particular, it appears that the manner in which this case was presented to the court may be viewed as an effort to mask the real party in interest—the City. Certainly, at this juncture, on the record now before it and in light of the court's above findings, the court has sufficient grounds to reconsider its prior orders.

Regarding the motion for preliminary injunction, Guild contends that the court should reconsider its oral ruling granting the motion in order to examine several equitable and affirmative defenses Guild raised in opposition to the motion, including: (1) "equity does not permit one potentially responsible party ("PRP") [i.e., the City] to shift the entire burden for the alleged contamination through a motion for preliminary injunction"; (2) "in addition to its own liability, the City has failed to name other necessary parties whom should be parties to any injunctive relief the court may order, and about whom it had developed direct, incriminating information regarding the contamination it attributes to Guild, which information was withheld from Guild"; and (3) "[a]s a PRP for the contamination, the City cannot seek to impose joint and several liability on a few defendants when the City itself is liable for the contamination." Guild JX Brief at 2.

Guild is correct. When the court previously ruled in the Plaintiff People's favor, it considered the Plaintiff People to be a "totally innocent" party—the State of California—since no claims had been asserted against it. Now, the court finds that the

17. Because the court reaches this decision, it does not consider Guild's various arguments concerning potential conflicts of interest which would exist if the Plaintiff People was treated as a separate entity from the City itself (question number 8).

State is not a party to this action and that the real party in interest is the City. The City, on the other hand, has many claims asserted against it as a PRP. This fact may dramatically affect the court's ultimate decision on the motion for preliminary injunction. Accordingly, the court VACATES its oral ruling granting the motion for preliminary injunction. The motion will have to be reset and re-briefed (at least in part) to address the new circumstances.[18]

Regarding the court's order, filed June 19, 2001, dismissing Guild's citizen suit against the City under RCRA on the basis that the State was diligently prosecuting a RCRA action, Guild has filed a motion for reconsideration set for hearing on June 14, 2002. The court will address the merits of that motion at that time.

### (3) *Guild's Request for Sanctions*

Guild asserts that the actions of the City of Lodi and the City Attorney of Lodi have contributed directly to a false belief on the part of the court (and to a certain extent the parties) that the City Attorney represented the interests of the State of California in this lawsuit. "The City's actions included numerous oral representations in open court that the City Attorney represented the interests of the State and it was in constant communication with, and acting with the full cooperation of, levels in state

government from the Governor's Office on down to the City." Guild's JX Brief at 5, 18–22. This fact is most clearly exemplified in the following colloquy which took place at the December 14, 2001 hearing on the motion for preliminary injunction: Stephen J. Meyer, counsel for Guild, stated to the court,

> [T]he State of California is not bringing the RCRA claim. It has got to be the City of Lodi, your Honor.

In response, the court stated:

> Well, the State of California has been sitting here listening to Mr. Donovan [plaintiffs' counsel] saying, 'I represent the State of California.' And I'm sure if there was a problem with that statement I would have heard about it from the State of California.
>
> \*    \*    \*    \*    \*    \*
>
> The fact remains that the State of California has been here. A representative of DTSC has been here. She in fact offered her opinions on the tutorial. I presume she's in communication with her counsel, and that they know what's going on. I assume that the State of California is fully aware of Mr. Donovan's representations in this Court.

Reporter's Transcript, Dec. 14, 2001, Ex. 2 to Meyer Decl. in Supp. of Guild's JX Brief, at 77:7–23. Despite the fact that similar discussions occurred between the

---

**18.** The court resets the hearing on the motion for preliminary injunction and a further briefing schedule below. The court is highly cognizant of the fact that the parties have expended a considerable amount of time briefing the motion for preliminary injunction. Much of that briefing is still relevant to the motion, and the court does not wish to duplicate matters already fully addressed. The court intends that the supplemental briefing requested below incorporate by reference, where possible, the original briefing. The supplemental briefing should only address the impact of the City moving as plaintiff on the motion. Also, the court is informed that

Guild intends to file a motion for reconsideration of the oral ruling granting the preliminary injunction on the basis of newly discovered evidence. That motion has yet to be filed, but Guild intends to notice the motion for June 14, 2002; once the court reviews the motion, it may continue the hearing on that matter to the date set below for the further hearing on the preliminary injunction. The oral ruling granting the preliminary injunction is now vacated, and it is likely that the purported new evidence in Guild's favor could be addressed in conjunction with the supplemental briefing ordered below.

court and the parties, beginning as early as August 2001, it was not until the State Agencies' January 23, 2002 letter that any of the court's statements or indirect questions were challenged or answered by the Plaintiff People, DTSC, or the State.

The court expressed its concern about these course of events, at the January 25, 2002 hearing, when the court advised Derek Van Hoorn, Senior Staff Counsel to DTSC:

> Mr. Van Hoorn, you have a lot of explaining to do to this Court, and I'm giving you that opportunity in the briefing schedule. But I can assure you that what you are telling me is right on the top of my mind. It is what in the world were you doing with Mr. Donovan and the City Attorney's Office if you weren't involved directly in fashioning this [proposed preliminary injunction] order, which now you have repudiated in your letter with respect to your involvement in the order.

Reporter's Transcript, January 25, 2002, Ex. 8 to Meyer Decl., at 33:7–16.

Relying on the above record, as well as many other references to the record,[19] Guild contends that the time and resources of the court, as well as the parties, have been unnecessarily wasted, and that sanctions should issue to reimburse Guild for its past attorneys' fees and costs incurred in litigating this action as if the State of California was a plaintiff. The court has further addressed Guild's request for sanctions in its order granting the Plaintiff People's motion to dismiss the RCRA claim for relief. The court repeats here its prior finding that Guild has made a sufficient showing that an order to show cause should issue re: imposition of sanctions.

### CONCLUSION

The court finds that the real party in interest asserting plaintiff People of the State of California's claims in this case is the City of Lodi. As a result, the court makes the following orders regarding various pending motions:

1. The court VACATES its oral ruling of December 14, 2001 granting the Plaintiff People's motion for preliminary injunction against Guild;

    a. Said motion shall be reset for hearing on August 9, 2002 at 10:00 a.m. in Courtroom 2;

    b. The Plaintiff People shall file a supplemental memorandum of points and authorities, not to exceed 40 pages in length, addressing the motion in the context of the City as the moving party on the state law nuisance claims on or before May 31, 2002;

    c. Guild shall file a supplemental memorandum of points and authorities in opposition thereto, not to exceed 40 pages in length, on or before June 28, 2002;

    d. The Plaintiff People shall file a supplemental memorandum of points and authorities in reply thereto, not to exceed 20 pages in length, on or before July 12, 2002;[20]

2. Plaintiffs' motion to lift stay of the court's December 14, 2001 oral ruling granting a preliminary injunction against Guild, currently set for hearing on June 14, 2002, is DENIED as moot; and

**19.** See Guild's JX Brief at 18–23. Said testimony further supports Guild's contentions and persuades the court that at a minimum, an order to show cause re: imposition of sanctions is warranted.

**20.** Both parties may also file declarations and evidence in support of their supplemental papers.

3. The continued hearing on the Plaintiff People's motion for preliminary injunction against Guild, currently set for June 14, 2002, is VACATED and reset for August 9, 2002 as set forth above.

IT IS SO ORDERED.